NO.
12-06-00039-CR

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

 

 

SUSANNA ARROYO,          §          APPEAL FROM THE 114TH

APPELLANT

 

V.        §          JUDICIAL DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE   §          SMITH COUNTY, TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



OPINION

            Susanna
Arroyo appeals from her conviction for capital murder.  In seven issues, she argues that the evidence
was insufficient to support the conviction and that the trial court should have
excluded evidence of her gang affiliation and the statements of a
coconspirator.  We affirm.

 

Background

            On July 1, 1999, Jeffrey Adam
Carrier and his friend Aaron Warren went to Kiloland Park, a landing on Lake
Palestine.  They introduced themselves to
a group who was already there, which included Hersain Gomez, Crystal Garcia,
Appellant, and three others.  Appellant
and her group had traveled together to Kiloland Park and spent the day drinking
alcohol, smoking marijuana, swimming, and listening to music.  Carrier asked the group if he could purchase
marijuana from them.  They did not have
any marijuana left, but someone in the group told Carrier that if he would
return later that evening, they would go to Tyler with him and help him find a
dealer.  Carrier agreed, and he and
Warren left the landing.  The group,
excluding Garcia at this time, began planning to rob the two boys when they
returned.  








            As instructed, the two boys returned
to Kiloland Park later that evening.  The
group’s car battery was dead, and so Warren, Carrier, and a member of the group
left in Carrier’s car to find jumper cables. 
While they were gone, the remaining members of the group, Garcia and
Appellant included, resumed their planning of the robbery of the two boys.  Hersain stated that they should just kill the
two boys because aggravated robbery and murder both had essentially the same
range of punishment.  No one voiced opposition
to that plan, and Appellant said she was “down with” Hersain’s plan.  Subsequently, the others returned and were
able to start the car.  The group and the
two boys left Kiloland Park in two cars. 


            They traveled to a remote area in
the far southern reaches of the city of Tyler. 
Once they arrived, two members of the group took Warren in their car,
telling the boys that the person they were to purchase marijuana from did not
like large groups of people at his house. 
The rest of the group, including Appellant,  remained with Carrier by his car.  At Hersain’s instruction, Garcia used a knife
to puncture two of the tires on Carrier’s car. 


            Garcia told Carrier about the flats,
and Carrier exited the car and got out the spare tire and the related tools.  While Carrier was kneeling down to work on
the flattened tire, Hersain picked up the spare tire and threw it at Carrier’s
head.  Carrier stood up, and he and
Hersain began to fight.  Carrier was
apparently getting the best of Hersain. 
That ended when Appellant hit Carrier with the car jack.  Carrier fell to the ground and Hersain and
Appellant continued to beat him.  At one
point, Carrier kicked Appellant in the leg. 
This angered Garcia.  She began to
kick Carrier as he lay on the ground and then picked up the tire iron and hit
Carrier with it a number of times.

            Hersain and Appellant dragged
Carrier from the roadside into the nearby wooded area.  Garcia proceeded to steal items from Carrier’s
car.  At one point Hersain called Garcia
to the edge of the woods and asked her to give him the knife she had used to
puncture the tires.  Garcia could hear
Carrier moaning in the woods, and she retrieved the knife and gave it to
Hersain.  Garcia did not witness what
happened next, but the knife blade was recovered from Carrier’s lifeless torso,
the handle broken off and lying nearby.

            The others returned, having
assaulted Warren, taken his money, and left him at a spot farther down the
road.  The group drove back to Tyler
together and dispersed.  Hersain and Appellant
fled to Mexico.  Michael Thompson, one
member of the group, contacted the police and notified them of the murder.  The police arrested him along with Garcia and
the rest of the remaining group. 

            Appellant was charged with the
capital murder of Jeffrey Carrier.  She
was captured in Mexico several years after the murder and returned to Smith
County for trial.  She pleaded not
guilty.  The jury found Appellant guilty
of the capital murder of Carrier, and she received the mandatory punishment of
imprisonment for life.  This appeal
followed.  

 

Accomplice Testimony

            In her first and second issues,
Appellant contends that the testimony of Crystal Garcia is not sufficiently
corroborated.  Although she phrases her
argument in terms of legal and factual sufficiency, Appellant’s argument is
that the accomplice testimony is not corroborated as required by law and that
the nonaccomplice testimony does not tend to link her to the commission of the
offense.

Applicable
Law

            A conviction may not be sustained on
the testimony of an accomplice unless there is other evidence “tending to
connect the defendant to the offense committed.”  Tex.
Code Crim. Proc. Ann. 38.14 (Vernon 2006); Simpson v. State,
181 S.W.3d 743, 753 (Tex. App.–Tyler 2005, pet. ref’d).  The corroborating evidence need not directly
connect the defendant to the crime or be sufficient by itself to establish
guilt, but it must do more than merely show the commission of the offense.  Tex.
Code Crim. Proc. Ann. 38.14; Vasquez v. State, 67 S.W.3d
229, 236 (Tex. Crim. App. 2002).  The
requirement of Article 38.14 is fulfilled if the combined weight of the
nonaccomplice evidence tends to connect the defendant to the offense.  See Cathey v. State, 992
S.W.2d 460, 462 (Tex. Crim. App. 1999). 
The corroborating evidence may consist of circumstantial evidence.  See Gosch v. State, 829
S.W.2d 775, 777 (Tex. Crim. App. 1991).  

            Even apparently insignificant
incriminating circumstances may provide sufficient corroboration.  Trevino v. State, 991 S.W.2d
849, 852 (Tex. Crim. App. 1999).  The
mere presence of the accused in the company of the accomplice before, during,
and after the commission of the offense is insufficient by itself to
corroborate accomplice testimony.  See
Dowthitt v. State, 931 S.W.2d 244, 249 (Tex. Crim. App.
1996).  Evidence of such presence,
however, coupled with other suspicious circumstances, may tend to connect the
accused to the offense.  Id.

            To evaluate whether there is
sufficient corroborating evidence, we eliminate the accomplice testimony from our
consideration and examine the record to ascertain whether the remaining
evidence tends to connect the defendant with the offense.  McDuff v. State, 939 S.W.2d
607, 612 (Tex. Crim. App. 1997).  The
accomplice witness rule is a statutorily imposed sufficiency review and is not
derived from federal or state constitutional principles that define the legal
and factual sufficiency standards.  Vasquez,
67 S.W.3d  at 236.

Analysis

            Crystal Garcia was an accomplice to
Carrier’s murder as a matter of law because she was charged with the same
offenses as Appellant.  See Burns
v. State, 703 S.W.2d 649, 651 (Tex. Crim. App. 1985).  Appellant does not argue that any other
witness was an accomplice.  Eliminating
Garcia’s testimony from our consideration, there remains ample evidence
connecting Appellant to the offense.  The
evidence includes the following:

 

                1)            Aaron
Warren identified Appellant as part of the group that took him and Carrier to
South Tyler.

 

                2)            Warren
further testified that he ran back to Carrier’s car after he was left on the
side of the road.  Consistent with Garcia’s
testimony, he found the car with two tires punctured and Carrier and the group
gone.  (Carrier was likely already dead,
lying nearby in the woods.)

 

                3)            Appellant
and Hersain discussed the murder with Benito Gomez, Hersain’s brother.  Appellant said that “it just happened” and
that she had taken a watch, presumably from the victim.  Hersain said more, including that he had hit
Carrier and that he had killed him. 

 

            In assessing the strength of a
particular item of nonaccomplice evidence, we examine its reliability or
believability and the strength of its tendency to connect the defendant to the
crime.  See Herron v. State,
86 S.W.3d 621, 632 (Tex. Crim. App. 2002). 
Warren’s testimony appears to be reliable, although he initially told
the police different stories in an attempt to hide the fact that he and Carrier
had been trying to purchase drugs.  Its
tendency to connect Appellant to the crime is relatively high, as it places
Appellant with the victim immediately before he was killed.  Both Hersain’s and Appellant’s statements to
Benito admitting to the murder connect Appellant to the crime directly,
although they are undermined to some extent by Benito’s inability to recollect
events or his reluctance to testify. 








            In Burks v. State, 876
S.W.2d 877, 888 (Tex. Crim. App. 1994), the court of criminal appeals held that
a sufficient connection to the crime was made where the nonaccomplice evidence
showed the defendant to have been near the crime scene an hour before the
crime, the defendant had a weapon similar to the murder weapon, the defendant
was looking for bullets, the defendant engaged in an incriminating
conversation, and he attempted to evade the police.  This case is similar to Burks
inasmuch as there is a connection of Appellant to the situs of the offense, and
there are incriminating statements after the fact as well as flight.  

            This case is distinguishable on the
facts from Wincott v. State, 59 S.W.3d 691 (Tex. App.–Austin
2001, pet. ref’d), the principal case advanced by Appellant.  In that case, the corroborative evidence did
little more than place the defendant in the company of the accomplices.  The court held that such evidence was proof
of association but did not link the defendant to the crime.  Id. at 702.  This case is different in that Warren’s
testimony places Appellant at the scene of the offense minutes before Carrier
was killed and Appellant’s statement to Benito provides a direct link to the
offense.  The nonaccomplice testimony
need only tend to link Appellant to the offense.  See Tex.
Code Crim. Proc. Ann. 38.14.  The
connection here is stronger that the mere associative link in Wincott
and is at least as powerful as the links in Burks.  Appellant was present immediately before the
offense, she made incriminating statements, and she had property, the watch,
that could have come from the offense. 
This links her not just to the other actors, but to the offense itself.  We overrule Appellant’s first and second
issues.

Gang Affiliation

            In her third issue, Appellant argues
that the trial court erred when it allowed the State to introduce evidence of
her gang affiliation.  Appellant argues
that this evidence was irrelevant and that its probative value did not outweigh
its prejudicial impact.

Standard
of Review and Applicable Law

            We review a trial court’s decision
to admit evidence for an abuse of discretion. 
Casey v. State, 215 S.W.3d 870, 879 (Tex. Crim. App.
2007); Caddell v. State, 865 S.W.2d 489, 492 (Tex. App.–Tyler
1993, no pet.).  A trial court abuses its
discretion when its decision to admit evidence lies outside the zone of
reasonable disagreement.  Casey,
215 S.W.3d at 879.

            Relevant evidence is
admissible.  Tex. R. Evid. 402. 
Evidence is relevant if it has a tendency to make the existence of any
fact that is of consequence more or less probable than it would be without the
evidence.  Tex. R. Evid. 401. 
Relevant evidence may be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury, or by considerations of undue delay, or
needless presentation of cumulative evidence. 
Tex. R. Evid. 403.  Evidence that does not have relevance apart
from character conformity is inadmissible. 
Tex. R. Evid. 404(b).

            With respect to evidence of gang
involvement specifically, we have previously discussed related issues in
appeals by two of Appellant’s codefendants. 
In Thompson v. State, 54 S.W.3d 88, 98 (Tex. App–Tyler
2001, pet. ref’d), we held that admission of evidence of gang affiliation was
proper because the State had shown that the gang in question engaged in violent
acts, which tended to show that Thompson should have anticipated Carrier’s
death in the course of the conspiracy to rob him.  In Martinez v. State, 147
S.W.3d 404, 409–10 (Tex. App.–Tyler 2001), rev’d on other grounds, 98
S.W.3d 189 (Tex. Crim. App. 2003), we held that the gang related evidence was
irrelevant because the State failed to introduce evidence showing any violent
activities in which the gang was known to have engaged.

Analysis

            Appellant acknowledges Thompson,
but seeks to differentiate it on the ground that nonaccomplice testimony,
including Thompson’s own statement, linked Thompson to the common scheme or
plan with the gang.  She argues that
there was no nonaccomplice testimony about her involvement, it was not shown
that she was a member of the gang, there was not reliable evidence that she
conspired to rob the victim, and it was not shown that Carrier’s murder was gang
activity.    We do not agree that this case is distinguishable from Thompson
on the grounds of nonaccomplice testimony. 
Whether there is accomplice testimony does not factor into the decision
to admit gang evidence.  It is true that
Thompson made a statement to the police that corroborated the accomplice
testimony.  See Thompson,
54 S.W.3d at 94.  Most of that same
evidence was provided in this case either by Crystal Garcia or by other
witnesses.  There was ample evidence
connecting Appellant to the gang and their plan.  This case is not distinguishable from Thompson
on the grounds that testimony linking Appellant to the gang or their plan was
lacking.

            If there were an issue about gang
tattoos and actual membership in the gang, Thompson could be
distinguished on those grounds.  Thompson
had tattoos that were, without serious dispute, related to gang
membership.  By contrast, Appellant
argues that the tattoo on her hand, which had apparently been removed prior to
trial, was not a gang tattoo and that she was not a gang member.  But resolution of whether Appellant was an
actual gang member is not the most important part of this inquiry.  The issue is how predictable the conduct of
the gang members was.  See Thompson,
54 S.W.3d at 98–100.  Garcia testified that
she and Appellant were both associates of the North Side Crips gang and that
girls or women could not be members of the gang.  There was evidence of the violent activities
of this gang.  In light of the testimony,
and in terms of Thompson, the evidence showing Appellant’s
association with, if not membership in, the North Side Crips was relevant to
show that Carrier’s death should have reasonably been anticipated as a
consequence of the conspiracy.  

            With respect to Appellant’s argument
that there was insufficient evidence to show that the killing was gang related
or that she was involved in the conspiracy, we disagree.  The gang evidence was not admitted to show
that the murder was gang activity.  It
was admitted to show that it was predictable that a homicide would occur as the
result of a conspiracy to rob someone in which some of the conspirators are
violent gang members.  And there was
evidence that she was involved in the conspiracy.  Crystal Garcia testified that Appellant said
she was “down with” Hersain’s plan. 

            Finally, the trial court’s ruling
that the probative value of this evidence is not outweighed by its prejudicial
impact is not outside the zone of reasonable disagreement.  There is a danger of unfair prejudice when it
comes to this kind of evidence because criminal street gangs, and those
associated with them, are not held in high regard.  In this case, however, we think the
prejudicial impact is less than it could be in another case.  Whether gang members or not, the group of
people Appellant associated herself with were not people the jury was likely to
hold in high regard.  They met the two
boys because they were breaking the law (smoking marijuana) and they made the
arrangements that led to Carrier’s murder by agreeing to break more laws
(brokering a marijuana transaction.). 
Indeed, the boys selected the group because they believed that the group
had access to controlled substances. 
Furthermore, Hersain’s nickname was “Demon,” and he had that moniker
tattooed across the back of his shaved head. 
Finally, the group engaged in a brutal murder to facilitate a petty
robbery.  Explaining to this jury that
they were members of a street gang helped the jury understand the
organizational structure of the group—and is why the evidence was relevant—but
it was not the jury’s first notice that they were not benevolent actors—which
is why it is not unduly prejudicial.  We
overrule Appellant’s third issue.

Statements of Coconspirator

            In her fourth, fifth, sixth, and
seventh issues, Appellant argues that the trial court erred when it allowed
into evidence statements made by Hersain Gomez the night of the murder.  Specifically, she argues that she was denied
her right to confront witnesses as guaranteed by the U.S. and Texas
constitutions and that the evidence was inadmissible hearsay.

Applicable
Law

            The Confrontation Clause of the
Sixth Amendment provides that “[i]n all criminal prosecutions, the accused
shall enjoy the right . . . to be confronted with the witnesses against him.”  Confronting a witness means, in the context
of testimonial evidence, that the defendant must be permitted to cross examine
the witness.  See Davis v.
Washington, 126 S. Ct. 2266, 2273–74, 165 L. Ed. 2d 224 (2006).  Where the declarant is unavailable, a testimonial
statement by a declarant is admissible only if the defendant has had a prior
opportunity to cross examine the witness. 
Crawford v. Washington, 541 U.S. 36, 59, 124 S. Ct. 1354,
1369, 158 L. Ed. 2d 177 (2004).[1] 

            Testimonial statements include
police interrogations and ex parte in–court testimony or its functional
equivalents, including extrajudicial statements contained in formalized
testimonial materials, prior testimony at a preliminary hearing, before a grand
jury, or at former trial.  See id.,
541 U.S. at 52, 124 S. Ct. at 1364. 
Whether a statement is testimonial depends on whether it was made under
circumstances that would lead an objective person reasonably to believe that
the statement would be available for use at a later trial.  See Davis, 126 S. Ct. at 2273–74;
Wall v. State, 184 S.W.3d 730, 735–36 (Tex. Crim. App.
2006).  

            In our review, we defer to a trial
court’s determination of historical facts and credibility.  See Wall, 184 S.W.3d at 742–43.  We review de novo the constitutional question
of whether a statement is testimonial.  Id.
 Appellant makes no independent argument
related to the Texas Constitution, incorporating arguments by reference, and
therefore we will assume that the protections of the Texas Constitution are no
broader.  See Key v. State,
173 S.W.3d 72, 77 (Tex. App.–Tyler 2005, pet. ref’d); see also Russeau
v. State, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005).[2]


            Statements of coconspirators are not
hearsay and are admissible against another coconspirator if the statement is
made during the course of and in furtherance of the conspiracy.  Tex.
R. Evid. 801(e)(2)(E).  In Lee
v. State, 21 S.W.3d 532, 538 (Tex. App.–Tyler 2000, pet. ref’d), we
distinguished between general statements by a conspirator and those in
furtherance of the conspiracy.  We said
that statements that are made in furtherance of a conspiracy include those made
(1) with intent to induce another to deal with coconspirators or in any other
way to cooperate with or assist coconspirators, (2) with intent to induce
another to join the conspiracy, (3) in formulating future strategies of
concealment to benefit the conspiracy, (4) with intent to induce continued
involvement in the conspiracy, or (5) for the purpose of identifying the role
of one conspirator to another.  Id.  Conversely, statements that are not in
furtherance of a conspiracy, and thus remain hearsay, include those that are
(1) casual admissions of culpability to someone the declarant had individually
decided to trust, (2) mere narrative descriptions, (3) mere conversations
between conspirators, or (4) “puffing” or “boasts” by coconspirators.  Id.  

            In contrast to constitutional legal
rulings, we review a trial court’s decision to admit evidence over a hearsay
objection for an abuse of discretion.  See
Willover v. State, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).  We will not disturb the evidentiary ruling of
the trial court unless it falls outside the zone of reasonable
disagreement.  See Montgomery v.
State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

Analysis

            Appellant argues that Hersain’s
statements, as recounted by Crystal Garcia and Benito Gomez, were inadmissible.[3]  Although Appellant discusses the standards
related to testimonial hearsay, she does not argue that the statements are
testimonial.[4]  Rather,
Appellant argues that her right to confrontation was violated because the
statements were inadmissible hearsay. 
This is not a claim that is supported by the current interpretation of
the Confrontation Clause.  See Davis,
126 S. Ct. at 2273 (“It is the testimonial character of the statement that
separates it from other hearsay that, while subject to traditional limitations
upon hearsay evidence, is not subject to the Confrontation Clause.”).  Only a testimonial statement causes the
declarant to be a “witness” within the meaning of the Confrontation
Clause.  Id.; see also Crawford,
541 U.S. at 51, 124 S. Ct. at 1364 (“The text of the Confrontation Clause
reflects this focus [on testimonial hearsay]. It applies to ‘witnesses’ against
the accused--in other words, those who ‘bear testimony.’”).  This does not mean the Confrontation Clause
can be violated only by the admission of testimonial evidence[5]
or that the introduction of nontestimonial evidence can never present a
Confrontation Clause violation.  But we
cannot accept, and Appellant has provided no authority for the proposition,
that every violation of the rules of evidence, including those involving
evidence that is not testimonial, is a violation of the Confrontation Clause.[6]

            Appellant further argues that
Hersain’s statement is a confession and that confessions by an accomplice that
implicate another are not a firmly rooted exception to the hearsay rule.  See Crawford, 541 U.S. at 56,
124 S. Ct. at 1367; Roberts v. Russell, 392 U.S. 293, 294–95, 88
S. Ct. 1921, 1921-22, 20 L. Ed. 2d 1100 (1968). 
But the Court in Crawford refers to a particular species
of confession.  In discussing this issue,
the Court discusses prior testimony and quotes from Lilly v. Virginia,
527 U.S. 116, 134, 119 S. Ct. 1887, 1899, 144 L. Ed. 2d 117 (1999) (plurality
opinion) as follows: “[A]ccomplices’ confessions that inculpate a criminal
defendant are not within a firmly rooted exception to the hearsay rule.”  Crawford, 541 U.S. at 58, 124
S. Ct. at 1368.

            When the Court in Crawford
uses the term “confession,” it is referring to testimonial confessions.  Crawford, 541 U.S. at 56, 124
S. Ct. at 1367.  Hersain admitted his
involvement in the murder to his brother, but his statements were not a
testimonial “confession” as described by Crawford.[7]  And, as Crawford makes clear,
coconspirator statements made during the course and in furtherance of a
conspiracy are not testimonial and are recognized as a firmly rooted hearsay
exception.  See id;
Bourjaily v. United States, 483 U.S. 171, 183, 107 S. Ct. 2775, 2782,
97 L. Ed. 2d 144 (1987) (“We think that the co-conspirator exception to the
hearsay rule is firmly enough rooted in our jurisprudence that, under this
Court’s holding in Roberts, a court need not independently
inquire into the reliability of such statements.”); Wiggins, 152
S.W.3d at 660.

            Finally, Appellant argues that the
trial court erred in admitting Hersain’s statements because they were not, she
argues, made in furtherance of the conspiracy.  If the conspiracy is understood as being only
to rob and to kill the boys, the conspiracy had ended at the time Hersain asked
his brother to help him and Appellant escape to Mexico.  See, e.g., Krulewitch v.
United States, 336 U.S. 440, 442–43, 69 S. Ct. 716, 717–18, 93 L. Ed.
790 (1949) (Extrajudicial statements made after end of conspiracy and after
principals had been arrested were not in furtherance of conspiracy.); Lee,
21 S.W.3d at 538 (statement not in furtherance of conspiracy).  But if the conspiracy is treated more
broadly, as an agreement to commit a robbery and murder and to escape capture,
or as a second conspiracy to escape capture, the statements can be understood
as being part of a conspiracy.  The statements
to Benito were not idle boasts or mere narrative descriptions of what had
happened.  Hersain was telling Benito
what had happened to impress upon him the importance of his and Appellant’s
flight from the jurisdiction.  

            The exception to the hearsay rule
for coconspirator statements is a “very narrow” one.  See Byrd v. State, 187 S.W.3d
436, 440 (Tex. Crim. App. 2005) (citing Wong Sun v. United States,
371 U.S. 471, 490, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)).  But there can be a conspiracy to hinder
apprehension.  See Byrd,
187 S.W.3d at 443 (Holding that conversation did not advance conspiracy to
hinder apprehension.).  The statements
here came fairly closely on the heels of the actual murder and were related to
the initial flight from the locale of the crime.  Furthermore, the construct that a
coconspirator’s statement is adopted by the defendant/conspirator[8]
is not strained in this case because Appellant was present when the statements
were made and made similar statements herself. 
Finally, there is little question that Appellant and Hersain were
working together to avoid being apprehended and that Hersain’s statement was
made to help them escape the jurisdiction.

            In this regard, Byrd
is instructive.  In Byrd,
an actor made two statements.  One was
the enunciation of a plan for one party to accept responsibility to protect
another participant.  The other was a
question about why one participant had hit the victim.  The court held that the first was properly
admitted and the second was not.  The
differentiating feature was that the first statement advanced the conspiracy to
escape apprehension or punishment and the second did not.  Id. at 442–44.  The statement here fits into the first
category.  Hersain’s statements advanced
the conspiracy to avoid capture, and therefore the trial court’s decision to
allow these statements as a coconspirator statement was not outside the zone of
reasonable disagreement. 

            If the statements were not made
during an active conspiracy or were not in furtherance of the conspiracy, they
would be inadmissible hearsay, and it would have been error to admit them.  As Appellant recognizes, the admission of
inadmissible hearsay is nonconstitutional error.  See Johnson v. State,
967 S.W.2d 410, 417 (Tex. Crim. App. 1998); Lee, 21 S.W.3d at
538.  Nonconstitutional error that does
not affect substantial rights must be disregarded.  See  Tex. R. App. P. 44.2(b).  A substantial right is affected when the
error had a substantial and injurious effect or influence in determining the
jury’s verdict.  King v. State,
953 S.W.2d 266, 271 (Tex. Crim. App. 1997). 


            In assessing the likelihood that the
jury’s decision was affected by an error, the appellate court should consider
everything in the record, including any testimony or physical evidence admitted
for the jury’s consideration, the nature of the evidence supporting the
verdict, the character of the alleged error, and how it might be considered in
connection with other evidence in the case. 
See Motilla v. State, 78 S.W.3d 352, 355-56 (Tex.
Crim. App. 2002).  Evidence of the
defendant’s guilt is also a relevant factor in conducting a harm analysis under
Rule 44.2(b).  Id. at 358.

            Here, Hersain’s statements had, at
most, a slight effect on the jury.  His
statement was that he had killed Carrier. 
Appellant made substantially the same statement at the same time, saying
that it had “just happened.” 
Furthermore, Warren’s testimony placed Appellant at the scene of the
offense, and Crystal Garcia was an eyewitness to the conspiracy and the assault
on Carrier if not to the actual murder. 
There was substantial evidence of Appellant’s guilt apart from Hersain’s
statement, including her own statement to Benito, and therefore any error in
admitting Hersain’s statement was harmless. 
We overrule Appellant’s fourth, fifth, sixth, and seventh issues.

 

Disposition

            Having overruled Appellant’s seven
issues, we affirm the judgment of the trial court.

 

 

 

                                                                                                     BRIAN HOYLE    

                                                                                                              Justice

 

Opinion delivered June 29, 2007.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

(PUBLISH)

 











[1] Hersain Gomez was at the trial. 
His tattoos were photographed and shown to the jury.  The State does not argue that he was
available for cross examination, and therefore we do not reach that question.





[2] Texas courts have treated the federal and Texas confrontation clauses
similarly.  See Long v. State,
742 S.W.2d 302, 313–14 (Tex. Crim. App. 1979), overruled on other grounds,
Briggs v. State, 789 S.W.2d 918 (Tex. Crim. App. 1990); see
also Cobb v. State, 85 S.W.3d 258, 268 (Tex. Crim. App. 2002)
(Broader protections in the Texas Constitution must be based upon firm support
in state history or policy.).





[3] We summarize the types of statements because, as the State points out,
Appellant has not identified the statements except to reference the testimony
of the two witnesses.  The State urges
that this failure to cite to the record waives this issue.  We will address the issue despite the lack of
direct citation to the record.





[4] Statements of a coconspirator in furtherance of a conspiracy are not,
in the ordinary case, testimonial.  See
Crawford, 541 U.S. at 56, 124 S. Ct. at 1367 (“Most of the hearsay
exceptions covered statements that by their nature were not testimonial--for
example, business records or statements in furtherance of a conspiracy.”); King
v. State, 189 S.W.3d 347, 359 (Tex. App. 2006);  Wiggins v. State, 152 S.W.3d
656, 659 (Tex. App.–Texarkana 2004, pet. ref’d).





[5] See, e.g., Delaware v. Van Arsdall, 475
U.S. 673, 679, 106 S. Ct. 1431, 1435, 89 L. Ed. 2d 674 (1986).





[6] Under Ohio v. Roberts, 448 U.S. 56, 66, 100 S. Ct. 2531,
2539, 65 L. Ed. 2d 597 (1980), admission of hearsay that did not bear an “indicia
of reliability” violated the Confrontation Clause.  See also Key v. State,
173 S.W.3d 72, 77 (Tex. App.–Tyler 2005, pet. ref’d).  Appellant argues that Crawford overruled
the Ohio v. Roberts “indicia of reliability” test.  Even if the Supreme Court did overrule Roberts,
it certainly did not hold that the Confrontation Clause is violated every time
inadmissible hearsay is admitted.  See
Crawford, 541 U.S. at 68, S. Ct. at 1374 (“Where nontestimonial
hearsay is at issue, it is wholly consistent with the Framers' design to afford
the States flexibility in their development of hearsay law. . . .).”





[7] Appellant does not make an argument that Crystal’s recounting of
Hersain’s statements was erroneously admitted, and her trial counsel
specifically declined to make a hearsay objection, stating, “I understand that
they [coconspirator statements] are excluded from hearsay under [Rule] 801.”





[8] See, e.g.,
Byrd, 187 S.W.3d at 440 (Coconspirator exemption from the hearsay
rule is based on agency principles, the underlying notion being that a
conspiracy is a common undertaking where the conspirators are agents of one
another and where the acts and statements of one can be attributed to all.)