**Sheikh Mohammed SOHAIL,**
**Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–06–00682–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 21, 2008.

Rehearing Overruled April 8, 2008.

Discretionary Review Refused
Oct. 1, 2008.

Stephen A. Doggett, Richmond, for Appellant.

John F. Healey Jr., Fort Bend County District Attorneys Office, Chad E. Bridges, Assistant Criminal District Attorney, Fort Bend County, Richmond, TX, for Appellee.

Panel consists of Justices TAFT, KEYES, and ALCALA.

## OPINION

ELSA ALCALA, Justice.

Appellant, Sheikh Mohammed Sohail, appeals from a judgment convicting him for Class A misdemeanor domestic violence assault. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b) (Vernon 2007). Appellant pleaded not guilty. The jury found him guilty and the trial court sentenced him to 365 days in jail, suspended for two years' community supervision, and a $2000 fine. After complainant refused to testify by invoking her right against self-incrimination, the trial court determined appellant's misconduct was the cause of complainant's unavailability and allowed the State to introduce her out-of-court statements that appellant punched her in the face. In three issues, appellant challenges the trial court's evidentiary rulings that (1) admitted complainant's out-of-court statements relating that appellant assaulted her; (2) excluded complainant's out-of-court statements denying that appellant assaulted her; and (3) disallowed appellant's attorney's questions to complainant to determine her reasons for invoking her right not to testify. We conclude that the trial court did not abuse its discretion by admitting the out-of-court statements offered by the State and by disallowing appellant's repeated questioning of complainant about her reasons for invoking her right not to testify. However, the trial court did abuse its discretion by refusing to allow appellant's sister to testify about inconsistent statements made by complainant, but we conclude that the error was harmless. We affirm the judgment of the trial court.

## Background

Complainant, Saima Qureshi, and appellant were joined through an arranged marriage in 1991, in a union that produced four children. It is undisputed that, on the morning of September 30, 2004, when complainant was eight months pregnant, appellant struck her on the right side of her face while they were at their house in Sugar Land. According to appellant and his mother, who was present at the house, appellant accidentally hit complainant in a reflex action when she spilled hot tea on him. Complainant, however, described the strike by stating that appellant intentionally hit her. After she was struck, complainant flew from Houston to Carrollton in Dallas County, Texas to her parents' house, bringing nothing with her but the clothes she was wearing. While complainant was on the way to her parents' house, appellant called them, stating, "I have sent your daughter back and I'm going to see you in court."

When complainant arrived at her parents' home, she was shaking and crying. Complainant's parents saw a bruise on her right eye. After complainant's mother learned from complainant what happened in Houston, she telephoned the local police. Complainant did not want to call the police because, according to complainant's moth-

er, complainant said that appellant threatened to kill their children if she called the police.

Sergeant McCraw of the Carrollton Police Department obtained a statement from complainant on the same day as the assault. When he spoke to complainant, she was upset and crying. The Sergeant said that he saw a large bump on the side of her head near her right eye that was beginning to bruise, as well as a large red abrasion in that area. The injuries were recorded in photographs.

When complainant returned to Sugar Land a day or two later, accompanied by her mother, she met Officer Liedy of the Sugar Land Police Department, who took complainant's statement, wrote a report, and photographed the injuries. Officer Liedy saw complainant's black eye. Sugar Land Police Department Officer Cummins, who later met complainant, also observed the black eye and bump on complainant's head. Complainant, her mother, Officer Cummins, and another officer went to complainant's house to retrieve complainant's hearing aid, medications, and some clothing, but they could not enter the house because no one answered the door and complainant did not have a key.

When the group returned to the house later that day, appellant answered. Officer Cummins described complainant's reaction to seeing appellant was that complainant "wouldn't move; and she—it was very apparent that she was scared." Officer Cummins said that complainant would look at appellant and then look away. Complainant asked appellant permission to enter the house. When the officer asked appellant about the claims against him, he became visibly upset as he raised his voice. As the group left the residence, appellant started screaming in a "very aggressive" tone in a language that the officer did not understand. Later that night, complainant called the officer to report that appellant was calling her, threatening to take her kids away from her. The officer called appellant to tell him not to call complainant. The following day, Officer Cummins returned to the residence for a welfare check on appellant. Appellant said that complainant's family would not let him speak to complainant because he hit her. Appellant did not tell the officer that the physical strike was a mistake or accident.

In the week while her mother was in Sugar Land, complainant stayed with a friend and obtained a protective order. At around the time the protective order was issued, appellant agreed with members of the Pakistani community to allow complainant to live in the house while he resided elsewhere. During a visit to a hospital to see a sick relative, complainant's mother was approached by appellant and his mother, who asked for forgiveness as they fell to complainant's mother's feet. Complainant's mother told them to leave because the hospital room was not the proper place for that behavior. Soon after complainant's mother left for Dallas, complainant dropped the protective order because, according to complainant's mother, "he forced her to." Appellant moved back into the house, where he has stayed since.

Complainant called her obstetrician, Dr. Durrani, to explain why she missed her appointment that was scheduled for October 1. When complainant appeared on October 6, the doctor was concerned about physical trauma that could injure the fetus. Dr. Durrani testified from complainant's medical records that were admitted into evidence. The doctor explained that the information about the physical confrontation was "utilized in assessing her medical treatment." The doctor testified that he saw a bruise on her right eye and he felt a bump on her head. The doctor recommended that, at least until the birth of the

child, complainant reside separately from appellant, and complainant agreed with his recommendation. Appellant introduced evidence that, during the medical examination, complainant's mother, who was present the entire time, said complainant "is abused."

At trial, the State called complainant as its first witness. After stating her name and address, complainant invoked her right against self-incrimination. Outside the presence of the jury, counsel for the State guaranteed complainant transactional immunity for anything stated at trial about the assault, but she persisted in her refusal to testify. The trial court held complainant in contempt of court, but complainant continued to refuse to testify. Complainant had her own attorney present during the hearing. Appellant later attempted to make a bill of exception by asking complainant to state her reasons for not testifying, but she refused to state the reasons by stating nothing more than that she was invoking her right against self-incrimination.

The trial court conducted a hearing outside the presence of the jury to determine whether complainant's out-of-court statements would be admitted at trial. The State's theory was that the out-of-court statements were admissible because the reason that complainant was unavailable as a witness was appellant's threats against her. Appellant's position was that the law allowed the out-of-court statements if the State proved appellant's wrongdoing was done with the intention of preventing the complainant from testifying, but that the State could not prove that here because the complainant's refusal to testify was not due to appellant's misconduct. Appellant's theory for complainant's refusal to testify was that she feared prosecution for perjury because she gave inconsistent statements about whether appellant had inten-

tionally struck her. Outside the presence of the jury, the State presented witnesses to support its theory that appellant's wrongdoing caused complainant's failure to testify. The trial court ruled that complainant's refusal to testify was due to appellant's wrongdoing and allowed the admission of the out-of-court statements offered by the State.

The State introduced out-of-court statements by complainant, over appellant's objections that the statements were hearsay admitted in violation of appellant's federal and state constitutional rights to confrontation and cross-examination. Sergeant McCraw, who saw complainant in Carrollton on September 30, testified that complainant said that appellant assaulted her that day by striking her head with his closed fist, causing her pain. She also told him that she attempted to call 911 to report the assault but appellant grabbed the telephone from her to strike her on the head with it before throwing it across the room. Complainant's mother testified that she was told by complainant, "My husband hit me with a closed fist in my eye and then I tried to call 911. So, he yanked the phone from my hand and hit me on my head with the phone." The doctor said that the complainant told him that "after she was punched in the face by her husband, she hit the wall."

Appellant introduced inconsistent statements made by complainant through his cross-examination of witnesses called by the State. Appellant introduced evidence that Officer Liedy's offense report showed that complainant said that the bump was caused by appellant's taking the telephone away from her to strike her on the head with it. Appellant also introduced evidence that complainant told the doctor that she was punched in the face by her husband and that she hit a wall after that. Appellant also introduced the doctor's testimony

that complainant told him that she was struck a day or so before she went to Dallas on October 1, and he was not sure when the strike occurred. Appellant further challenged the time of the offense by introducing the sworn affidavit of Officer Cummins that accompanied the criminal complaint for the charge of assault, which noted that complainant said that on the evening of September 29, she and appellant argued and he struck her with the telephone and with his hand as she tried to call 911. Although the affidavit showed that the assault occurred on September 29, the date of the assault shown on the complaint itself was September 30, which the officer explained by noting that it may have been the argument that began the night before the assault.

In his defense, appellant attempted to introduce evidence of prior inconsistent statements made by complainant that appellant accidentally struck her when she spilled hot tea on him. Appellant wanted to introduce complainant's statements in a letter, affidavit, tape recording, and verbal comments made to appellant's sister. The trial court determined that appellant could not introduce the evidence, which was included in our appellate record under appellant's bill of exception.

In his defense at trial, appellant presented testimonial evidence. Enrique Ramirez, owner of a taqueria that rented space from a gas station owned and operated by appellant, initially testified that he saw complainant uninjured and happy on September 30, but he later acknowledged that he did not specifically recall the date that he saw her.

Appellant's mother, Shakila Ishtiaq, lived with appellant and complainant for 18 years. Shakila testified that the argument between appellant and complainant began the night before the physical contact. She said that they were very angry, screaming at each other. Shakila heard appellant tell complainant to get him some tea. Shakila saw complainant serve appellant the tea "with a force" that caused some tea to fall on his chest. With one hand, appellant held his shirt, and with his other hand, he "made contact" with complainant, touching her, as he ordered her to stay back. He did not hit her with any force, nor with his fist, nor did he do anything with a telephone. When appellant went to change his shirt, complainant said that she was leaving for Dallas. Complainant left with no luggage.

Consistent with his mother's testimony, appellant testified that the physical contact was an accident caused by the spilling of hot tea, which caused his hand to react and accidentally hit complainant. Appellant asserted that the contact he made with complainant's face during the argument could not have caused the bruising evident in the photographs, that the bruising was due to complainant's hitting and slapping herself, and that complainant's mother enhanced the bruising by marking complainant's face with a permanent marker before taking photos. During cross-examination, the State confronted appellant with a taped recording of a voice mail he left for complainant the day of the assault apologizing for "hitting" complainant. Appellant also disputed the claims by complainant's mother that appellant's abuse caused complainant's hearing loss, stating it was a condition complainant had had since she was a child.

Subsequent to the jury's verdict of guilty, complainant was called to the witness stand by appellant and testified in the punishment phase of trial. Complainant admitted that appellant had hit her, giving her a black eye. When asked how many times appellant had hit her, she responded, "That was the last time that's happened." She further stated, however, that she

wanted appellant to come home and that they wanted to go to counseling.

After the trial court sentenced him, appellant filed a motion for new trial. The motion for new trial complained of errors in jury selection, admission of inadmissible evidence, restriction of testimony, and exclusion of evidence. After a non-evidentiary hearing, the trial court denied the motion. The trial court suspended appellant's community supervision pending appeal.

### Standard of Review for Evidentiary Rulings

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Torres v. State,* 71 S.W.3d 758, 760 (Tex.Crim.App. 2002). We will not reverse a trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. *Burden v. State,* 55 S.W.3d 608, 615 (Tex.Crim. App.2001). Therefore, we address each of appellant's evidentiary challenges by determining whether the trial court's rulings were outside the zone of reasonable disagreement. *See id.* An appellate court must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Ross,* 32 S.W.3d 853, 856 (Tex.Crim.App.2000).

### Admission of Out–Of–Court Statements

In his second issue, appellant contends that the trial court improperly admitted hearsay statements made by complainant in violation of appellant's state and federal rights to confront and cross-examine complainant. Appellant asserts that the State did not show that misconduct by appellant was aimed at causing complainant not to testify. The State responds that the trial court properly admitted the out-of-court statements due to appellant's misconduct in making the witness unavailable.

### A. Applicable Law for Admission of Out–Of–Court Statements

A defendant has a constitutional right to confront and cross-examine the witnesses against him. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Confrontation Clause prohibits a witness from recounting a declarant's out-of-court statements that are testimonial unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant, regardless of whether the declarant's statements are deemed reliable by the court. *See Crawford,* 541 U.S. at 68, 124 S.Ct. at 1374; *accord Wall v. State,* 184 S.W.3d 730, 734–35 (Tex.Crim.App.2006). However, the right of confrontation is not absolute, even when testimonial hearsay statements are at issue. *Gonzalez v. State,* 195 S.W.3d 114, 117 (Tex.Crim.App.2006). The Constitution provides defendants with an opportunity to confront those witnesses against him, but

> if a witness is absent by [the defendant's] own wrongful procurement, [the defendant] cannot complain if competent evidence is admitted to supply the place of that which he has kept away. The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts.

*Id.* at 117–18. "[T]he rule of forfeiture by wrongdoing ... extinguishes confrontation claims on essentially equitable grounds." *Crawford,* 541 U.S. at 62, 124 S.Ct. at 1370.

Although the rule is not codified in the Texas Rules of Evidence, the Court of Criminal Appeals has held that "a party forfeits the right to object, on hearsay grounds, to the admission of a declarant's

prior statement when that party's deliberate wrongdoing procured the unavailability of the declarant as a witness." *Gonzalez*, 195 S.W.3d at 119. The rule is widely utilized in cases where a defendant has intimidated, bribed, or killed a witness in order to ensure unavailability. *Id.* at 118. We assume without deciding that the State must prove that appellant's threats to complainant were done with the intent to procure her silence as a witness.[1]

■ Contrary to appellant's suggestion that the appearance of the complainant at trial shows he did not intimidate her, physical unavailability is not the only way to find forfeiture by wrongdoing. Intimidation is a well-recognized basis for employment of forfeiture by wrongdoing. *Id.* Thus, complainant's presence in court does not resolve the matter of her unavailability as a witness. *See id.*

**B. The Evidence Outside Presence of Jury that Appellant was Wrongdoer**

■ At the hearing outside the presence of the jury to determine the admissibility of the out-of-court statements, complainant's mother testified appellant struck complainant hundreds of times over the last 10 years causing bruises and hearing loss that requires complainant to wear a hearing aid. Complainant's mother testified that complainant is "very scared to testify." Complainant's mother said that appellant threatened to kill complainant if she went to court, to treat her as a prostitute, and to never allow her to see her children. Appellant also threatened violence to complainant's siblings and their families. Complainant's mother received the information about the assault by speaking to complainant and by conversing with appellant, who called after this offense to say that he was going to kill complainant. Complainant's mother said that appellant "always forces [complainant] to do everything the way he wants it." Complainant's mother reported complainant's statement that appellant will beat her if she tries to call the police.

Officer Cornelius with the Sugar Land Police Department described his visit to appellant's house on May 10, 2006, which was about a year and a half after this offense, in response to a call reporting an argument. Complainant told the officer that the argument with appellant began that day when complainant returned to her house after unsuccessfully attempting to speak to the Assistant District Attorney to

---

1. The Court of Criminal Appeals has not determined whether the proponent of the evidence must prove that the intent of the defendant in committing the wrongful act was to procure the silence of the witness. *Gonzalez v. State*, 195 S.W.3d 114, 125 (Tex.Crim.App. 2006) (explicitly declining to decide issue). However, in the same case, the San Antonio Court of Appeals held that a defendant need not intend to prevent a witness from testifying in committing the wrongful act. *Gonzalez v. State*, 155 S.W.3d 603, 610–11 (Tex.App.-San Antonio 2004), *aff'd*, 195 S.W.3d 114 (Tex. Crim.App.2006). While few Texas courts have ruled on the issue, federal courts and courts in other states have held that the State need not show that the defendant intended to render the witness unavailable by his misconduct. *See Gonzalez*, 195 S.W.3d at 122–23 (citing *United States v. Garcia–Meza*, 403 F.3d 364, 370–71 (6th Cir.2005); *United States v. Mayhew*, 380 F.Supp.2d 961 (S.D.Ohio 2005); *State v. Meeks*, 277 Kan. 609, 88 P.3d 789 (2004) (holding doctrine applicable to defendant charged with murder of witness said to be unavailable); *People v. Moore*, 117 P.3d 1 (Colo.App.2004) (same); *People v. Giles*, 40 Cal.4th 833, 55 Cal.Rptr.3d 133, 152 P.3d 433 (2007), *cert. granted, Giles v. California*, —— U.S. ——, 128 S.Ct. 976, 169 L.Ed.2d 800 (2008)). There is a split of authority on this issue. Other states require the State show that a defendant acted with the intent to render the witness unavailable. *See, e.g., Vasquez v. People*, 173 P.3d 1099 (Colo.2007); *Commonwealth v. Edwards*, 444 Mass. 526, 830 N.E.2d 158, 170 (2005).

drop these charges pending against him. The officer testified that complainant said that appellant "made her go up to the court to try to get those charges either lessened or dropped." When she was unable to have the charges dropped, complainant said that appellant pulled her hair and destroyed property in the house.

Although appellant disputed the violence and threats, the trial court could have determined appellant was not credible and disregarded his version of the events. *See Bousquet v. State*, 47 S.W.3d 131, 134–35 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd) (deferring to trial court's determination of historical facts when findings are based on evaluation of credibility and demeanor). The record supports the trial court's implied determination that appellant's intimidation caused complaint to refuse to testify at the trial. The record shows repeated physical violence toward complainant by appellant. Additionally, it shows appellant's repeated threats to kill complainant if she called police or pursued criminal charges. After this case was filed, appellant "made" complainant go to the District Attorney's office to try to get the criminal charges dropped and then became violent when she was unable to meet with the prosecutor. The trial court could have reasonably determined that fear of prosecution for perjury was not the reason for complainant's refusal to testify because the State offered her transactional immunity for her trial testimony. Further, complainant refused to testify despite the trial court's decision to hold her in contempt for her refusal to testify. We hold that the trial court did not abuse its discretion in permitting the submission of complainant's out-of-court statements by determining that appellant's deliberate wrongdoing procured the unavailability of complainant as a witness. *See id.* Therefore, the trial court did not err by allowing the doctor, complainant's mother, and the Carrollton Police Officer to testify about complainant's out-of-court statements describing the assault.

We overrule appellant's second issue.

## Exclusion of Out–Of–Court Statements

In his first issue, appellant asserts that the trial court erred by excluding out-of-court statements made by complainant that were offered by appellant to impeach complainant's out-of-court statements that were introduced by the State. Outside the presence of the jury, appellant offered out-of-court statements by complainant denying that appellant intentionally hit her. Appellant claimed that the evidence was admissible as (1) statements made against penal interest and (2) impeachment evidence of complainant's statements admitted at trial by the State's witnesses. Appellant's attorney made a bill of exception to include in the appellate record the evidence excluded at trial. The excluded evidence is (A) physical evidence, namely (1) a letter found by appellant that was written by complainant stating that appellant never hit or pushed her; (2) a certified affidavit by complainant requesting dismissal of the protective order so she could reunite with appellant; and (3) a tape recorded statement by complainant, and (B) the live testimony by appellant's sister, who said that complainant told her that complainant spilled hot tea on appellant, which caused him to accidentally react by hitting her face with his hand.

### A. The Physical Evidence

▇▇▇ The State contends that the trial court properly excluded the physical evidence because appellant offered the entire documents and tape rather than properly redacted versions that contained only admissible evidence. "When a trial judge is presented with a proffer of evidence

containing both admissible and inadmissible statements and the proponent of the evidence fails to segregate and specifically offer the admissible statements, the trial court may properly exclude all of the statements." *Willover v. State*, 70 S.W.3d 841, 847 (Tex.Crim.App.2002). The trial court does not have a duty to make the proper proffer or objection for the parties. *Id.* at 845 n. 5. We must uphold the ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Id.* at 845. Thus, we must not reverse the trial court's ruling that excludes evidence offered by appellant, even if the State did not object at trial on the same grounds it asserts on appeal. *See id.*

■ The letter, which is part of our appellant record under a bill of exception, includes more than the impeaching statements by complainant denying this assault. The letter includes extraneous information denying that appellant ever hit or pushed complainant, that complainant was depressed, that her state of mind was unstable, that the couple was having financial trouble, that her mother "always had an eye on his money," and that appellant "is a very responsible husband and loving father."

The affidavit to dismiss the protective order is also part of our record under a bill of exception. The affidavit contains extraneous hearsay information not related to the contradictory statements made by complainant. For example, the affidavit states that appellant misses complainant and their children, that the children miss appellant, and that appellant cares about and loves complainant.

The tape is a conversation between complainant and an unnamed man. She discusses the incident, the control her mother exerts over her life, the love she has for her husband, and her desire not to divorce.

There is also discussion of two extraneous incidents not discussed at trial. First, she mentions that while she was staying with a friend upon returning to Sugar Land, appellant called police stating that she had been "held hostage" by the people with whom she was staying. She goes on to say that she was pressured by those people to say that she was not being held hostage. Second, she says that she was pressured by her mother into telling the District Attorney that appellant had abused drugs, but that it was untrue that he ever took drugs.

We hold that the trial court properly excluded the documents on the basis that they contained inadmissible hearsay and extraneous information. *Id.* at 845–47.

Having determined that the trial court did not err by excluding the documents and audio tape, we next decide whether appellant's sister's testimony should have been admitted.

## B. The Witness Testimony

■ Appellant contends that the witness testimony was admissible under Rule 806 of the Texas Rules of Evidence that states, "When a hearsay statement ... has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported by any evidence which would be admissible for those purposes if declarant had testified as a witness...." Tex.R. Evid. 806. Thus, the State cannot try a case based largely on complainant's hearsay statements, without calling complainant as a witness, and then legitimately object when appellant seeks to admit complainant's other inconsistent hearsay statements to impeach complainant. *Marcel v. State*, 64 S.W.3d 677, 679 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd). Evidence that a complainant later disavows his or her prior

statements reflects on the credibility of that complainant, and such evidence pertaining to credibility would be admissible if complainant had testified as a witness. *See* TEX.R. EVID. 613(a); *Marcel,* 64 S.W.3d at 679. Although impeachment evidence is admissible under Rule 806, the evidence offered can be utilized only for that single purpose. *Head v. State,* 4 S.W.3d 258, 261–62 (Tex.Crim.App.1999); *see also Schaffer v. State,* 777 S.W.2d 111, 114 (Tex. Crim.App.1989). If the evidence is submitted primarily to prove the truth of the matter asserted, and not wholly for purposes of impeachment, the trial court should exclude it. *Bee v. State,* 974 S.W.2d 184, 190 (Tex.App.-San Antonio 1998, no pet.).

In the present case, complainant did not testify at the guilt-innocence stage of the trial, but her statements to police and to her parents were admissible out-of-court statements. Appellant is correct that he had a right to impeach complainant's credibility through other evidence, including hearsay. *See* TEX.R. EVID. 806; *Marcel,* 64 S.W.3d at 679. The trial court excluded testimony by appellant's sister, to whom complainant said that the assault was an accident. This inconsistent statement by complainant reflects on complainant's credibility and would have been admissible had complainant testified as a witness. *Marcel,* 64 S.W.3d at 679. Thus it was error for the trial court to exclude appellant's impeachment evidence.

### Harm Analysis

 Because the exclusion of appellant's sister's testimony was error, we must determine how the trial court's exclusion of the testimony likely affected the jury's decision. The Texas Rules of Appellate Procedure require appellate courts to disregard any error not affecting substantial rights of an appellant. TEX.R.APP.

P. 44.2(b); *Johnson v. State,* 43 S.W.3d 1, 4 (Tex.Crim.App.2001). Substantial rights are affected only when the error has a significant and injurious effect on the jury. *Johnson,* 43 S.W.3d at 4. If there is no influence or only a slight effect on the finder of fact, reversal is not required. *See id.* "In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the error, and how it might be considered in connection with other evidence in the case." *Motilla v. State,* 78 S.W.3d 352, 355 (Tex.Crim.App. 2002). The reviewing court may also consider the jury instructions, the State's theory, any defensive theories, closing arguments, voir dire, and the degree of the State's emphasis on the error. *Id.* at 355–56.

The evidence was undisputed that appellant struck complainant. The dispute was whether the strike was intentional. Appellant and his mother presented testimony that the strike was an accident caused by complainant's spilling hot tea on appellant. Complainant's version, introduced through her mother, a police officer, and a doctor, was that appellant punched her with his fist and then hit her on the head with a telephone when she tried to call 911.

Through cross-examination, appellant was able to show inconsistencies in the version told by complainant through testimony that she told the officer and her mother that after appellant punched her, appellant hit her with a telephone, but she instead told the doctor that she hit a wall after she was punched. Appellant also introduced inconsistent evidence about the time complainant was injured, whether it was the night before she left

for Carrollton or the day she left. Appellant further introduced evidence that Officer Liedy's offense report showed that complainant said the bump was caused by appellant's taking the telephone away from her to strike her on the head with it. Thus, although appellant was precluded from presenting evidence of a contradictory statement given by complainant to appellant's sister, he introduced other inconsistent statements by complainant. Furthermore, appellant himself introduced evidence that he had struck complainant with a telephone, and thus he acknowledged that he had assaulted complainant.

In addition, the jury saw photographic evidence that was inconsistent with appellant's version of the events that he accidentally hit complainant without force due to her spilling tea on him. The jury saw the photos of the injuries that depicted complainant's bruised face. Appellant attempted to explain what was shown in the photos by stating that the marks were the result of complainant's hitting herself and of the use of a permanent marker to enhance the appearance of the injuries on complainant's face. Assuming appellant's sister had been allowed to convey the same story about the hot tea that appellant and his mother told, the physical evidence was inconsistent with that story.

The jury also heard a recorded voice mail message by appellant to complainant apologizing for "hitting" her, without mentioning any claim of accident. The officer who accompanied complainant to her house to gather belongings said complainant seemed to fear appellant, who spoke in a very aggressive tone. Appellant also told that officer that complainant's family did not like him because he hit her, and appellant did not qualify the statement by adding that the assault was an accident.

We conclude that the excluded testimony was repetitious of the version of the incident testified to by appellant and his mother, and that it was inconsistent with the physical evidence. Furthermore, complainant's version was impeached by inconsistencies that were pointed out during cross-examination of the State's witnesses. We hold that the trial court's exclusion of appellant's impeachment evidence did not substantially injure the rights of appellant and the error was therefore harmless.

We overrule appellant's first issue.

## Disallowing Questions About Reasons For Not Testifying

In his third issue, appellant contends that the trial court improperly restricted his ability to establish the reason for complainant's refusal to testify. Appellant asserts that "[t]he trial court's admonishments to and actions against the complainant were so strong that they violated appellant's due process rights by intimidating the complainant into refusing to answer the critical question of why she was claiming the 5th amendment." Appellant contends that complainant was intimidated by the court's holding her in contempt, placing her in a holding cell, threatening her with incarceration if she did not make a $500,000 bond, and improperly admonishing her that if she answered any questions she would lose the entire right not to testify. In short, appellant asserts that the trial court's actions "drove the complainant from the witness stand." The State responds that the record reveals no evidence of intimidation of complainant.

A defendant's due process rights may be violated if the trial court or prosecutor coerces or intimidates a witness to the extent that it "drive[s] the witness off the stand." *Cathey v. State*, 992 S.W.2d 460, 464 (Tex.Crim.App.1999).

Whether or not a witness was intimidated into invoking the right against self-incrimination depends largely on the facts of the case as contained in the trial record. *Davis v. State*, 831 S.W.2d 426, 438 (Tex. App.-Austin 1992, pet. ref'd). Due process rights are infringed upon only in extreme cases of intimidation where admonishments are so "unnecessarily strong" and "exerted such duress on the witness's mind as to preclude him from making a free and voluntary choice whether or not to testify." *Webb v. Texas*, 409 U.S. 95, 97–98, 93 S.Ct. 351, 351, 34 L.Ed.2d 330 (1972). However, "a warning to a witness made judiciously under circumstances that reasonably indicate a need for it and which has the effect of merely preventing testimony that otherwise would likely have been perjured does not violate a defendant's right to due process." *Davis*, 831 S.W.2d at 438 (quoting *State v. Melvin*, 326 N.C. 173, 388 S.E.2d 72, 79–80 (1990)); *see also Grayson v. State*, 684 S.W.2d 691, 696 (Tex.Crim.App. 1984); *Boler v. State*, 177 S.W.3d 366, 371–72 (Tex.App.-Houston [1st Dist.] 2005, no pet.).

■ After complainant invoked her right against self-incrimination, the State gave her transactional immunity. Complainant refused to testify, even after the trial court held her in contempt. Appellant called complainant to the stand outside the presence of the jury to make a bill of exception. The trial court admonished complainant that the State gave her transactional immunity that would allow her to testify free from a charge of perjury, but that "once you stop taking the Fifth Amendment, you're always open" to questioning. During the hearing, complainant consulted with her attorney, who was present for the hearing. The record shows the following exchange:

[Appellant's attorney]: Ms. Qureshi, are you taking the Fifth Amendment be-cause you fear possible prosecution by the State because of what your testimony would be or because Mr. Sohail has frightened you or scared you into not testifying?

[Complainant]: I respectfully refuse to answer any questions. I invoke the Fifth Amendment, as my right against self-incrimination.

Appellant did not object to the trial court's admonishment to the witness when complainant first invoked her right not to testify.

After several witnesses testified, appellant re-urged the trial court to allow him to question complainant outside the presence of the jury about her reasons for refusing to testify. Appellant wanted to question complainant without the trial court admonishing the complainant that any testimony would open the door to everything. Appellant told the court that it was obligated to determine why the witness was invoking the right not to incriminate herself to decide if the claim was valid. The State responded that appellant's attorney discussed trial testimony with complainant in violation of the rule instructing witnesses not to discuss testimony. Appellant's attorney acknowledged that during the trial complainant asked him, "Did you hear my mother testify? What did she say?" The attorney told complainant that her mother testified that appellant struck her hundreds of times. Appellant's attorney said that an attorney may discuss testimony with a witness without violating the rule, that the discussion with complainant did not include details, and the feelings by complainant's mother were well known prior to the discussion. The trial court declined to give appellant another opportunity to question complainant's reasons for not testifying.

Contrary to appellant's assertions, the trial court gave him the opportunity to ask

complainant why she was refusing to testify. What appellant complains of is the trial court's refusal to allow him to repeatedly ask for complainant's reasons. We cannot conclude the trial court erred by refusing to allow appellant to repeatedly question complainant about her reasons for not testifying.

 Also contrary to appellant's assertions, the trial court's admonishments in no way prevented complainant from testifying. Appellant's contention that the court's threat of finding complainant to be in contempt caused her not to testify is nonsensical. The trial court's finding of contempt did not prevent her from testifying but was in response to her refusal to abide by the order requiring her to testify. Complainant made a decision, on the advice of her counsel, to invoke the right against self-incrimination before the trial court gave any admonition. Nothing in the record suggests that the trial court made "unnecessarily strong" admonishments or threats to complainant. *See Webb,* 409 U.S. at 97–98, 93 S.Ct. at 353. We conclude the trial court's admonishment did not push complainant to refuse to testify; rather the admonishments were aimed at encouraging complainant to testify. *See id.* We overrule appellant's third issue.

## Conclusion

We affirm the trial court's judgment.