ACCEPTED
14-15-00164-CR
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
11/12/2015 2:57:59 PM
CHRISTOPHER PRINE
CLERK

## No. 14-15-00164-CR

In the

Court of Appeals

For the

Fourteenth District of Texas

At Houston

————————◆————————

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

11/12/2015 2:57:59 PM

CHRISTOPHER A. PRINE
Clerk

## No. 1396268

In the 179th District Court

Of Harris County, Texas

————————◆————————

**NICHOLAS OLIVER GOREE**

*Appellant*

V.

**THE STATE OF TEXAS**

*Appellee*

————————◆————————

STATE'S APPELLATE BRIEF

————————◆————————

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**DAN MCCRORY**
Assistant District Attorney
Harris County, Texas
mccrory_daniel@dao.hctx.net

**CARA BURTON**
**MELISSA DICKSON**
Assistant District Attorneys
Harris County, Texas

1201 Franklin, Suite 600
Houston, Texas 77002
Tel.: 713/274-5826
FAX No.: 713/755-5809

*Counsel for Appellee*

ORAL ARGUMENT WAIVED

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 39.7, the State waives oral argument since the briefs adequately address all the legal issues and appellant also waived argument.

# **TABLE OF CONTENTS**

STATEMENT REGARDING ORAL ARGUMENT ....................................................i

INDEX OF AUTHORITIES ................................................................ iii

STATEMENT OF THE CASE..............................................................1

STATEMENT OF FACTS ................................................................1

SUMMARY OF THE ARGUMENTS.........................................................4

REPLY TO POINT OF ERROR ONE.......................................................5

CERTIFICATE OF SERVICE ...........................................................15

CERTIFICATE OF COMPLIANCE .......................................................15

# INDEX OF AUTHORITIES

**CASES**

*Bryant v. State*,
    666 S.W.2d 124 (Tex. App.--Houston [14th Dist.] 1983, pet. ref'd) ...................10

*Carvajal v. State*,
    No. 04-94-00680-CR, 1995 WL 595802 (Tex. App.--San
    Antonio Oct. 4, 1995, no pet.) (not designated for publication) ...........................9

*Layton v. State*,
    280 S.W.3d 235 (Tex. Crim. App. 2009) ............................................................6

*Miles v. State*,
    468 S.W.3d 719 (Tex. App.--Houston [14th Dist.] 2015, pet. filed) ......................6

*Motilla v. State*,
    78 S.W.3d 352 (Tex. Crim. App. 2002) ..............................................................11

*Renfro v. State*,
    822 S.W.2d 757 (Tex. App.--Houston [14th Dist.] 1992, pet. ref'd) ...................10

*Simpson v. State*,
    181 S.W.3d 743 (Tex. App.--Tyler 2005, pet. ref'd) ...........................................13

*Sneed v. State*,
    955 S.W.2d 451 (Tex. App.--Houston [14th Dist.] 1997, pet. ref'd) ....................7

*Sohail v. State*,
    264 S.W.3d 251 (Tex. App.--Houston [1st Dist.] 2008, pet. ref'd) ......................10

*Wells v. State*,
    880 S.W.2d 185 (Tex. App.--Texarkana 1994, pet. ref'd) ....................................9

**RULES**

TEX. R. APP. P. 44.2 ......................................................................................................10

TEX. R. APP. P. 39.7 ........................................................................................................ i

TEX. R. EVID. 401....................................................................................................6

TEX. R. EVID. 402....................................................................................................6

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

Appellant was charged by indictment with the offense of aggravated robbery, enhanced by a prior felony conviction. (CR 17). After finding appellant guilty of the charged offense and the allegation in the enhancement paragraph true, the jury assessed punishment at 38-years confinement. (CR 151).

## STATEMENT OF FACTS

The complainant, Larry Rodriguez, lived with his mother in an apartment. (RR V 91, 93). On one particular day, at about 5:00 p.m., Rodriguez was alone in the apartment when he answered a knock on his door. (RR V 99-101). Upon opening the door, he saw appellant's codefendant, Paul Byrd, wearing a white tank top and armed with a gun. (RR V 103, 255). The complainant tried to close the door, but Byrd forced his way into the apartment. (RR V 104-105).

Once inside the apartment, Byrd ordered the complainant to lay on the ground. (RR V 106). The complainant laid down, but he "had [his] eyes up" so that he could see. (RR V 109). As Byrd stood over the complainant, appellant entered the apartment wearing a multicolored striped tank top. (RR V 56-57, 107-108, 113, 170). The complainant saw something in appellant's hand that appeared to be a gun. (RR V 113).

Appellant demanded to know the location of the complainant's money and safety deposit box. (RR V 110). While Byrd continued to stand over the complainant with a gun, appellant moved about the apartment collecting the complainant's wallet and other property (including jewelry, a TV, a laptop, and an Xbox) and loaded the items into the complainant's mother's red Sentra which was parked right outside the apartment. (RR V 17, 110-116, 151, 173-174). After securing these belongings, appellant and Byrd left the apartment. (RR V 117-118). A short time later, the complainant's mother arrived home and called the police. (RR V 118-119).

Appellant and Byrd spent about ten or fifteen minutes inside the complainant's apartment. (RR V 115, 189). During this time, the complainant got a "full view" of appellant. (RR V 112). He saw appellant in a well-lit room from a distance of about two or three feet. (RR V 112).

Meanwhile, the complainant's mother, Norma Leal, arrived home at about 5:45 p.m. (RR V 12). As she approached her home from the bus stop across the street from her apartment, Leal saw appellant loading property into a red car. (RR V 12-16, 56-57). As she drew closer, Leal realized it was her car that appellant was loading. (RR V 21). When Leal was about three parking spaces away from him, appellant and his accomplice got in her car and drove away. (RR V 20-21, 66).

2

The suspects drove "right close to" Leal and almost hit her as they left. (RR V 21, , 84). She had to jump out of the way to avoid being hit. (RR V 86, 88-89). She looked at them for several seconds and "had a pretty clear look at their face[s]." (RR V 22, 24). Leal then entered her home and found the complainant lying face down on the floor. (RR V 24).

Two police officers arrived shortly after Leal called for them. (RR V 25-26). The complainant and his mother provided the officers a description of the suspects, the stolen property, and the stolen car. (RR IV 31-33). One of the officers, Erica Dean, learned that Leal's car had crashed into a bus stop located about one mile from the scene of the robbery. (RR IV 33-38; RR V 29-30). From there, the suspects fled on foot. (RR IV 34).

Appellant and Byrd soon were apprehended while hiding under a tarp in a locked, fenced-in area behind a nearby Sam's Club. (RR IV 39-41; RR V 208-209, 212-213, 222-223). They were in possession of some of the items stolen during the robbery, as well as two guns. (RR IV 41-46; RR V 216-227, 240-243).

Officers escorted appellant and Byrd back to the apartment in separate patrol vehicles to see if Leal could identify them in a "show up" identification procedure. (RR IV 45-47, 66, 75). This occurred about one hour after the officers initially left the apartment. (RR V 58). While Leal observed, the two suspects were removed from the patrol vehicles "one by one" in the parking lot. (RR IV 76). Leal got a

3

good look at each suspect and immediately identified both of them as being involved in the robbery. (RR IV 77-79; RR V 52). Leal was "a hundred percent" certain of her identification of appellant. (RR V 55).

The complainant did not participate in this show up identification procedure because he was still in shock at the time. (RR V 155). However, he observed a lineup the following morning and identified appellant as one of the robbers. (RR V 155-164, 190). The complainant was positive of his identification of appellant, stating "I knew it was him." (RR V 166, 190).

## SUMMARY OF THE ARGUMENTS

The complainant's misidentification of a different defendant (Byrd) in a different lineup identification procedure was not relevant to the accuracy of the complainant's identification of appellant in a separate lineup because different circumstances underlie each identification procedure, meaning the complainant's performance in one lineup was not indicative of the accuracy of his identification in the other lineup. Furthermore, even if the exclusion of evidence regarding the Byrd lineup was erroneous, any error was harmless because such evidence, at best, was only marginally relevant and the evidence establishing appellant's identity as one of the robbers was overwhelming.

## REPLY TO POINT OF ERROR ONE

In his sole point of error, appellant contends the trial judge erred in excluding evidence of the complainant's misidentification during his observation of Byrd's lineup procedure. Appellant maintains such evidence is relevant to the contested issue of appellant's identity as the robber.

Relevant facts

The complainant actually viewed two lineups the day after the robbery. (RR V 131). The two lineups were used to identify two separate individuals, presumably appellant and Byrd. (RR V 131). The complainant identified appellant in the second lineup. (RR V 130-131). He was positive of his identification. (RR V 131). He did not identify anyone other than appellant in that lineup. (RR V 130).

In the first lineup, however, the complainant identified two people, neither of whom were appellant or Byrd. (RR V 138). Since the complainant testified the two lineups were used to identify separate individuals and appellant appeared in the second one, evidently Byrd was in the first one and appellant was not. (RR V 131).

Appellant attempted to cross-examine the complainant about his misidentifications in the first lineup, explaining such evidence was relevant because if the complainant "was incorrect in the first [lineup], he could have been

incorrect in the second one." (RR V 186-187). The judge determined evidence relating to the first lineup was not relevant and excluded it. (RR V 186-187).

Standard of review

A trial judge's decision to exclude evidence is reviewed for an abuse of discretion. *Miles v. State*, 468 S.W.3d 719, 724 (Tex. App.--Houston [14th Dist.] 2015, pet. filed). The ruling will not be reversed unless it falls outside the zone of reasonable disagreement. *Id*.

Argument and authority

The trial judge excluded evidence relating to the complainant's misidentifications during the Byrd lineup after determining it was not relevant. (RR V 186-187). On appeal, appellant responds that the excluded evidence was relevant to the complainant's identification of appellant (which occurred during a different lineup). (appellant's brief, pp. 15-16).

Generally, relevant evidence is admissible and evidence that is not relevant is not admissible. TEX. R. EVID. 402. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401. When determining whether evidence is relevant, courts must examine the purpose for which the evidence is being introduced. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). It is

6

critical that there is a direct or logical connection between the actual evidence and the proposition sought to be proved. *Id.* Questions of relevance should be left largely to the trial court, relying on its own observations and experience. *Sneed v. State*, 955 S.W.2d 451, 453 (Tex. App.--Houston [14th Dist.] 1997, pet. ref'd).

The trial judge did not abuse her discretion by excluding evidence of the complainant's misidentification during the Byrd lineup. The complainant's inability to accurately identify another defendant (Byrd) in another lineup (the first lineup) is not relevant to the accuracy of the complainant's identification of appellant in a different lineup (the second lineup).

There was no evidence that whatever circumstance may have prevented the complainant from identifying the correct suspect in the first lineup existed in relation to the second lineup as well. For example, the record indicates that the complainant had a better opportunity to see appellant than Byrd during the robbery. The complainant did see Byrd's face when he initially opened his front door, but the complainant's attention was quickly diverted to the gun in Byrd's hand. (RR V 103, 152). Byrd forced the complainant to lay down on his stomach and then stood over the complainant's prone body. (RR V 106, 109, 151). Byrd remained standing over the complainant, straddling his body with his feet, during the entire robbery. (RR V 108, 173-174). Byrd did not say anything during this time. (RR V 108). Given Byrd's position directly over the complainant, it would have been difficult

for the complainant to see Byrd during the ten- to fifteen-minute period the robbers were in the apartment. (RR V 174, 189).

On the other hand, the complainant was able to observe appellant during the lengthy robbery. Although he was laying on his stomach, the complainant's "face wasn't completely down" and he had his "eyes up." (RR V 109). So he could see appellant "going back and forth" as he asked the complainant the location of certain items. (RR V 108-109, 176-177). In fact, the complainant gained a "full view of" appellant as appellant entered Leal's bedroom in search of jewelry. (RR V 112). He saw appellant from a distance of only several feet. (RR V 112). The complainant also heard appellant speak a couple of phrases during the robbery which the second lineup participants were required to repeat during the identification procedure. (RR V 110; RR VII - SX 41).

Given the disparity in the complainant's opportunity to observe the two robbers, the complainant's inability to accurately identify Byrd in the first lineup speaks to the complainant's lack of opportunity to sufficiently view Byrd. Similarly, having heard appellant speak certain phrases during the crime and during the lineup procedure, the complainant had more tools with which to accurately identify appellant.

So the complainant's inability to accurately identify Byrd in the first lineup was not relevant to the complainant's ability to accurately identify appellant in the

8

second lineup since the complainant's failure to correctly identify Byrd likely was caused by circumstances unique to the first lineup. In other words, since the lineups involved different situations (i.e., the extent of the complainant's ability to see the individuals during the robbery and the availability of a voice comparison, and perhaps circumstances relating to how the two lineups were constructed and administered), the complainant's performance at one particular suspect's lineup had no bearing on the accuracy of his identification at a different defendant's lineup.

A somewhat analogous issue was addressed in *Wells v. State*, 880 S.W.2d 185 (Tex. App.--Texarkana 1994, pet. ref'd). The defendant was charged with the offense of possessing cocaine. *Id*. at 186. The defendant attempted to ask one of the arresting officers if he had ever made a mistake in a drug arrest by questioning him about a prior arrest that allegedly had not resulted in a conviction. *Id*. at 187. The trial judge determined this evidence was not relevant to the defendant's case and excluded it. *Id*. The reviewing court ruled that evidence of a prior misidentification was not relevant to any fact issue in the case. *Id*. at 188; *see also Carvajal v. State*, No. 04-94-00680-CR, 1995 WL 595802, at *2 (Tex. App.--San Antonio Oct. 4, 1995, no pet.) (not designated for publication) (interpreting *Wells* as rendering prior misidentifications irrelevant).

9

Similarly, in the instant case, the complainant's inability to identify Byrd in the context of his unique lineup procedure was not relevant to the complainant's ability to identify appellant in a separate lineup procedure. While evidence of prior misidentifications of a particular defendant may be relevant to show in a specific case that that particular defendant has been incorrectly identified, the misidentification of people other than the defendant is not relevant to the issue of whether the defendant was correctly identified. *Id*.; *Bryant v. State*, 666 S.W.2d 124, 125-26 (Tex. App.--Houston [14th Dist.] 1983, pet. ref'd); Compare *Renfro v. State*, 822 S.W.2d 757 (Tex. App.--Houston [14th Dist.] 1992, pet. ref'd).

Since the evidence of the complainant's misidentification during the Byrd lineup was not relevant, the trial judge did not abuse her discretion by excluding it. Absent any error, appellant's point of error is meritless and should be overruled.

Moreover, even assuming the exclusion of the misidentification evidence was erroneous, any error was harmless. The Texas Rules of Appellate Procedure require appellate courts to disregard any error in the exclusion of evidence that does not affect the defendant's substantial rights. *Sohail v. State*, 264 S.W.3d 251, 262 (Tex. App.--Houston [1st Dist.] 2008, pet. ref'd) (citing TEX. R. APP. P. 44.2(b)). Substantial rights are affected only when the error has a significant and injurious effect on the jury. *Sohail*, 264 S.W.3d at 262. If there is no influence or only a slight effect on the jury, reversal is not required. *Id*.

Even assuming the complainant's misidentification of Byrd in a separate identification procedure was somehow relevant to the complainant's identification of appellant in an entirely different lineup procedure, any relevance was minimal for the same reasons argued above for the proposition that evidence of the Byrd lineup was without any relevance. Namely, given the disparity in the complainant's ability to see and hear appellant and Byrd during the commission of the robbery and any possible differences in the manner in which the two lineups were conducted, any relevancy assigned to the complainant's performance at the Byrd lineup was marginal, at best.

Furthermore, the evidence of appellant's identity as one of the robbers was overwhelming. *Motilla v. State*, 78 S.W.3d 352, 358 (Tex. Crim. App. 2002) (overwhelming evidence is factor in harm analysis). The complainant testified that he got a "full view" of appellant during the commission of the offense. (RR V 112). Appellant was in the complainant's apartment for about ten or fifteen minutes and the complainant saw appellant in a well-lit area from a distance of several feet. (RR V 112, 189). The complainant also heard appellant's voice when he made a couple of comments. (RR V 110).

During the live lineup, appellant and the other lineup participants were presented to the complainant in a variety of poses so that the he could view their features from a number of different angles. (RR V 162; RR VII – SX 41). The

lineup participants also were made to recite the same comments the robber made during the robbery. (RR V 162; RR VII – SX 41). So the complainant was provided a very detailed image of all the lineup participants.

The complainant testified at trial that he was positive of his lineup identification of appellant, explaining that he recognized appellant's body frame. (RR V 165-166). The complainant "saw [appellant] in the lineup and [he] knew him. [He] knew it was him." (RR V 190). He also closely looked at the faces of the five men in appellant's lineup. (RR V 178). He identified appellant during the lineup based on his memory of the robbery and he would have been able to identify appellant in court even if he had not viewed the lineup. (RR V 164). The complainant did, in fact, identify appellant in court. (RR V 164). Accordingly, the record demonstrates that the complainant's identification of appellant was very strong.

Leal also provided compelling evidence relating to appellant's identification as one of the robbers. She saw appellant load her car with stolen property and then drive away from the apartment with Byrd. (RR V 13-22). She saw appellant three times during the entire episode. (RR V 22). Leal was "right in front of them" as they drove away and she clearly saw their faces. (RR V 22-24, 69). Leal immediately identified appellant and Byrd as the robbers about an hour later during the show-up identification procedure. (RR IV 78; RR V 54-55, 58). She was "a

hundred percent" certain of her identification of appellant. (RR V 55). She also identified appellant in court as the robber. (RR V 56-57).

In addition to this convincing identification testimony from these two eyewitnesses, appellant and Byrd were apprehended a short time after the robbery at a location near the complainant's apartment (and near the wrecked stolen car) while in possession of two guns and property stolen from the complainant's apartment. (RR IV 34-41, 44; RR V 123-126, 152). Appellant and Byrd matched the description provided to police by Leal. (RR IV 41-42). Appellant's possession of the recently stolen property provides compelling evidence establishing his identity as the robber. Furthermore, appellant's attempt to hide from the police further strengthens the evidence of his guilt and his identity as the robber. (RR 212-213, 223). *Simpson v. State*, 181 S.W.3d 743, 755 (Tex. App.--Tyler 2005, pet. ref'd) (attempt to hide evinces a consciousness of guilt).

Therefore, at best, evidence of the complainant's misidentification during Byrd's lineup was only marginally relevant to the complainant's identification of appellant. More importantly, the evidence establishing appellant's identity as the robber was overwhelming. Therefore, the admission of the excluded evidence would not have influenced the jury's assessment of the identity issue. As such, any error in the exclusion of the evidence was harmless.

Point of error one is meritless and should be overruled.

## CONCLUSION

It is respectfully submitted that all things are regular and the conviction should be affirmed.

**DEVON ANDERSON**
District Attorney
Harris County, Texas

/s/ Dan McCrory
**DAN McCRORY**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 274-5826
TBC No. 13489950
mccrory_daniel@dao.hctx.net

## **CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing instrument has been sent to the

following email address via TexFile:

Mark A. Rubal
Attorney at Law
mrubal@ws-law.com

/s/ Dan McCrory
**DAN McCRORY**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 274-5826
TBC No. 13489950

## **CERTIFICATE OF COMPLIANCE**

The undersigned attorney certifies that this computer-generated document
has a word count of 2,974 words, based upon the representation provided by the
word processing program that was used to create the document.

/s/ Dan McCrory
**DAN McCRORY**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 274-5826
TBC No. 13489950

Date: 11/12/2015