

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-22-00391-CR

Juan Antonio **RIVERA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2019CR11753
Honorable Ron Rangel, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:       Irene Rios, Justice
               Beth Watkins, Justice
               Liza A. Rodriguez, Justice

Delivered and Filed: July 24, 2024

AFFIRMED

Appellant Juan Antonio Rivera challenges his conviction for aggravated assault with a deadly weapon. We affirm the trial court's judgment.

## BACKGROUND

On August 17, 2019, dispatchers sent paramedics and police to a residential address after receiving a report that a vehicle had hit a pedestrian. Inside the residence, paramedics found Sharee Valadez lying on a couch with bruises on her head, face, and body and a laceration on her leg. Valadez's boyfriend, Rivera, was also present. While Valadez initially told first responders she

had been hit by a car, she eventually told a paramedic and a police officer that her boyfriend had hit her with a bat. San Antonio police officers arrested Rivera, and in October of 2019, a Bexar County grand jury indicted him for aggravated assault with a deadly weapon.

On June 25, 2021, the State filed a "Motion for a Hearing on Forfeiture by Wrongdoing." *See* TEX. CODE CRIM. PROC. ANN. art. 38.49(a). In its motion, the State argued Rivera had "wrongfully procured the unavailability of the complaining witness [Valadez] in the case" and asked the court to conduct a hearing on whether he had therefore "forfeited his right to object to the admissibility of the complainant's statements under the Confrontation Clause." Rivera did not respond to the State's motion. On June 30, 2021, the State orally informed the trial court that it had filed the motion and had attempted to subpoena Valadez, but she had not responded. Neither Rivera nor his trial counsel were present in the courtroom at the time, and the trial court did not hear or decide the State's motion that day.

The trial in this cause began on March 24, 2022, and the parties began presenting evidence to the jury the next day. Valadez did not appear at trial. The first witness, paramedic Geoff Stebbings, testified that he treated Valadez and did not believe her injuries were consistent with a car accident. Stebbings further testified that his EMS report indicated Valadez had told him her boyfriend hit her "numerous times" with a baseball bat. Both Stebbings and police officer Ann Garcia testified that they had not seen any signs of a collision near the residence or in the surrounding streets. Additionally, Garcia testified without objection that she "had received information that—that it possibly wasn't an accident, that [Valadez] had been assaulted with a bat." At that point, neither Stebbings nor Garcia had specifically identified Rivera as Valadez's boyfriend/assailant, and the trial court had not heard any evidence or argument on the issue of forfeiture by wrongdoing.

On the morning of March 28, 2022, Rivera filed a motion to suppress and a motion for continuance of the hearing on forfeiture by wrongdoing. In both motions, he contended the State first notified him of the hearing on forfeiture by wrongdoing after jury selection on March 24, 2022, and he requested additional time to subpoena witnesses. The State objected to the motion for continuance, and the trial court deferred ruling on it until after it heard the State's evidence on forfeiture by wrongdoing. After hearing the State's evidence and Rivera's proffer of what his witnesses would have testified to, the trial court denied Rivera's requested continuance and granted the State's motion for forfeiture by wrongdoing. Garcia subsequently testified that Valadez told her Rivera had hit her with both a bat and a belt. Other police officers testified that Valadez's statements to Garcia were consistent with their review of the evidence in this case.

After hearing the evidence, the jury found Rivera guilty as charged in the indictment. The trial court signed a judgment of conviction and sentenced Rivera to forty years' imprisonment. Rivera now appeals.

**ANALYSIS**

***Forfeiture by Wrongdoing***

The Sixth Amendment to the United States Constitution bars "admission of testimonial statements of a witness who did not appear at trial unless [s]he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004); *Gonzalez v. State*, 195 S.W.3d 114, 116 (Tex. Crim. App. 2006). One recognized exception to this confrontation requirement is the common law doctrine of forfeiture by wrongdoing, which "exempts a statement from the restrictions of the Confrontation Clause" when a defendant engages in conduct that is "'*designed* to prevent the witness from testifying.'" *Brown v. State*, 618 S.W.3d 352, 355 (Tex. Crim. App. 2021) (quoting *Giles v. California*, 554 U.S. 353, 359 (2008)); *see also Colone v. State*, 573 S.W.3d 249, 264 (Tex. Crim. App. 2019).

In his second issue on appeal, Rivera challenges the trial court's denial of his motion for a continuance of the hearing on the State's motion for forfeiture by wrongdoing. In his fourth issue, he argues the State did not meet its burden to establish wrongdoing. Because our resolution of these issues is necessary to determine what evidence was properly before the jury, we consider them first.

*Continuance*

A.     Standard of Review and Applicable Law

Rivera did not move for a continuance until the third day of trial, after the State had begun presenting evidence to the jury. When a party requests a continuance after a trial has begun, the court may grant the motion "when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had." TEX. CODE CRIM. PROC. ANN. art. 29.13.

"The granting or denying of a motion for continuance is within the sound discretion of the trial court." *Renteria v. State*, 206 S.W.3d 689, 699 (Tex. Crim. App. 2006). "To establish an abuse of discretion, the appellant must show that the trial court erred in denying the motion for continuance and that the denial actually and specifically prejudiced appellant's defense." *Kinnett v. State*, 623 S.W.3d 876, 906 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (internal quotation marks omitted).

B.     Application

Rivera argued below that he did not have adequate time to subpoena witnesses to testify at the March 28, 2022 forfeiture by wrongdoing hearing because the State did not notify him of the hearing until the afternoon of March 24, 2022 and did not provide him with a copy of its motion until the morning of March 25, 2022. On appeal, he argues the trial court abused its discretion and

violated his right to due process by denying his motion for continuance. The State argues Rivera waived this issue because he did not raise a due process argument below.

We will assume, without deciding, that Rivera preserved this issue for our review. The State first filed a motion seeking a hearing on forfeiture by wrongdoing on June 25, 2021, nearly nine months before the hearing took place. While Rivera's counsel argued he was not aware of the motion until a few days before the hearing, the trial court could have reasonably concluded the motion was not an "unexpected occurrence" that developed after the trial began and "which no reasonable diligence could have anticipated[.]" TEX. CODE CRIM. PROC. art. 29.13.

Furthermore, "a bare assertion" that counsel did not have adequate time to prepare "does not alone establish prejudice." *Heiselbetz v. State*, 906 S.W.2d 500, 511–12 (Tex. Crim. App. 1995). Here, while it is true Rivera did not present witnesses during the forfeiture by wrongdoing hearing, the trial court allowed his counsel to explain that his witnesses would have testified that Valadez executed multiple waivers of prosecution "under her own steam, under no threats[.]" The court expressly considered that proffer when it ruled on both Rivera's motion for continuance and the State's motion for forfeiture by wrongdoing. However, it also considered the State's evidence, which—as explained more fully below—consisted of recorded phone calls and a letter in which Rivera specifically asked Valadez to sign a waiver of prosecution. On this record, we cannot say Rivera has shown the denial of his motion for continuance resulted in actual prejudice to his defense. *See DeVaughn v. State*, 239 S.W.3d 351, 354–55 (Tex. App.—San Antonio 2007, pet. ref'd).

For these reasons, the trial court did not abuse its discretion by denying Rivera's requested continuance. *See, e.g.*, *Nwosoucha v. State*, 325 S.W.3d 816, 825–28 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). "In the absence of an abuse of discretion, there generally can be no violation of due process." *Id.* at 828. We therefore overrule Rivera's second issue.

*Forfeiture by Wrongdoing Evidence*

A.     Standard of Review and Applicable Law

The trial court's decision to grant the State's motion for forfeiture by wrongdoing constituted a ruling that Valadez's out-of-court statements—specifically, her statement to Garcia that Rivera hit her with a bat—would be admissible at trial even if Valadez herself did not testify. *See* Tex. Code Crim. Proc. art. 38.49(a), (b); *Gonzalez*, 195 S.W.3d at 125–26 (characterizing admission of out-of-court statements under forfeiture by wrongdoing doctrine as "an evidentiary ruling"). Accordingly, we review that ruling for abuse of discretion. *See Colone*, 573 S.W.3d at 263–64; *Gonzalez*, 195 S.W.3d at 125–26. We may not disturb the trial court's ruling unless its decision falls outside the zone of reasonable disagreement. *See, e.g.*, *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016).

Article 38.49 of the Texas Code of Criminal Procedure provides:

A party to a criminal case who wrongfully procures the unavailability of a witness or prospective witness:

(1) may not benefit from the wrongdoing by depriving the trier of fact of relevant evidence and testimony; and

(2) forfeits the party's right to object to the admissibility of evidence or statements based on the unavailability of the witness as provided by this article through forfeiture by wrongdoing.

Tex. Code Crim. Proc. art. 38.49(a). To obtain a finding of forfeiture by wrongdoing, the State was required to show by a preponderance of the evidence: (1) Valadez was unavailable to testify; (2) Rivera engaged in wrongful conduct; (3) Rivera's wrongful conduct procured Valadez's unavailability; and (4) Rivera intended to procure Valadez's unavailability. *See Brown*, 618 S.W.3d at 356; *Shepherd v. State*, 489 S.W.3d 559, 573–75 (Tex. App.—Texarkana 2016, pet. ref'd); *see also* Tex. Code Crim. Proc. art. 38.49(a)–(c).

The State was not required to show that Rivera's sole intent was to cause Valadez's unavailability or that his conduct in procuring her unavailability constituted a criminal offense. TEX. CODE CRIM. PROC. art. 38.49(d). "Wrongful conduct need not be violent or explicitly threaten physical harm . . . it may also include intimidation, harassment, offering a bribe, encouraging or pressuring an individual not to testify, leveraging financial dependence, threatening to report a prospective witness to CPS, or instructing a witness on how to avoid service." *Mohsin v. State*, __ S.W.3d __, No. 03-22-00175-CR, 2024 WL 1896421, at *7 (Tex. App.—Austin 2024, pet. ref'd) (listing cases).

B.      Application

On appeal, Rivera does not dispute that Valadez was unavailable to testify. He argues only that the State did not establish he "committed any wrongdoing" or "deprived the trier of fact of relevant evidence and testimony."

During the forfeiture by wrongdoing hearing, the State presented a letter Rivera wrote to Valadez in which he urged her to sign an affidavit of non-prosecution and told her, "Remember, everything that belongs to me is yours!" The State also presented several recorded phone calls Rivera made to Valadez and others from the Bexar County Jail. In a November 13, 2019 call to his sister, Rivera said, "I'm gonna hope that she doesn't go to court. If she don't go to court, you know, I got this. . . . There's really no witnesses. . . . And it's her word against mine. And I don't think she's gonna show up, either [*sic*]." In a January 21, 2020 call, Rivera instructed another individual to call Valadez and ask her to sign a waiver of prosecution, stating, "Tell her I need it as soon as possible. Tell her that I'm gonna write to her and I'm gonna tell her what to say [*sic*]."

In calls to Valadez herself, Rivera repeatedly urged her not to appear at trial and to refuse or block the State's attempts to obtain her testimony:

- In an April 16, 2020 call, Rivera told Valadez, "Just do your best to help me. . . . I can't do no more time. . . . I want to end my life, man." He later added, "Defendant has the right to face their accuser, but if you don't show up, there shouldn't be a case . . . so don't show up." During the same phone call, Valadez told Rivera, "I would be out on the streets. . . . I would be out and about, if it wasn't for your family, for you not leaving me behind."

- In an April 27, 2020 call, Rivera initially told Valadez to talk to the district attorney and "tell 'em you got robbed, man." He also told her he would "write everything down" for her and instructed her to "look out for [his] letter." He later added, "You have to help me out, babe, my life is on the line. . . . Tell them, I don't care if you subpoena me or what, I'm not gonna testify against that man, he didn't do nothing [*sic*]." During this call, Rivera also told Valadez, "If you're getting along good with my mom, and you're getting along good with me . . . you don't have to go nowhere, man."[1]

- In a May 13, 2020 call, Rivera told Valadez, "No face, no case. . . . I know I told you to go on that court date, but you know what, I don't want you to go. Don't go, okay? . . . Don't go, don't go at all. . . . Just don't show up on my court date on the 24th, okay? . . . I'll keep you in my prayers, and don't go to court, remember."

- In a May 17, 2020 call, Rivera told Valadez, "They're gonna try to get ahold of you, they're gonna try to subpoena you. . . . They're gonna persuade you and they're gonna threaten you. . . . Block 'em or whatever the case may be. . . . You tell them I don't care if you subpoena me, you're not gonna testify against me [*sic*]." He later added, "My life's on the line here, man. . . . They can't go by no EMS, it doesn't matter what they say, you're the star witness . . . that's why I tell you don't go, because according to the Sixth Amendment . . . the defendant has the right to face the accuser at trial . . . if you don't go, there's no case, you know what I mean? That's why I tell you not to go. . . . If they get what they want, then I'll never get to talk to you again."

- In a June 1, 2020 call, Rivera told Valadez, "Remember that on the day that I go to court, you know what I mean . . . don't show up at all, you hear me? You hear me? They're gonna try to reach you . . . and just block 'em or whatever, you hear what I'm saying? Don't mess with these people. You hear me? Please, babe, please [*sic*]."

*See Mohsin*, 2024 WL 1896421, at *7. Throughout these phone calls, Valadez repeatedly responded to Rivera's instructions with, "Yes, sir."

Our sister court of appeals recently held that similar evidence supported a trial court's decision to grant the State's motion for forfeiture by wrongdoing. *See Sanchez v. State*, No. 13-22-00512-CV, 2024 WL 377855, at *4 (Tex. App.—Corpus Christi–Edinburg Feb. 1, 2024, pet.

---

[1] In an earlier phone call, Rivera and Valadez discussed the fact that Valadez was staying with Rivera's mother.

ref'd) (mem. op., not designated for publication) ("In the jail calls admitted during the hearing, Sanchez begged Griffith not to appear in court. Such an act was undoubtedly done with the intent to have Griffith not testify."). We find the *Sanchez* court's analysis instructive and reach the same conclusion here. Rivera's recorded statements to Valadez establish that he knew she would be the State's "star witness" and that he urged her not to appear in court because he believed the State could not prosecute him without her testimony. *See id.* at *1–2; *see also Mohsin*, 2024 WL 1896421, at *7. Such behavior is precisely why forfeiture by wrongdoing is a recognized exception to the Confrontation Clause. *See Giles*, 554 U.S. at 365 ("The absence of a forfeiture rule covering this sort of conduct [intended to prevent a witness from testifying] would create an intolerable incentive for defendants to bribe, intimidate, or even kill witnesses against them."); *Gonzalez*, 195 S.W.3d at 117 ("The doctrine is based on the principle that any tampering with a witness should once [and] for all estop the tamperer from making any objection based on the results of his own chicanery.") (internal quotation marks omitted).

Moreover, "[i]ntimidation is a well-recognized basis for employment of forfeiture by wrongdoing." *Sohail v. State*, 264 S.W.3d 251, 259 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). Here, the trial court reasonably could have interpreted Rivera's statement, "If you're getting along good with my mom, and you're getting along good with me . . . you don't have to go nowhere, man," and Valadez's own statement that she "would be out on the streets . . . if it wasn't for [Rivera's] family," as evidence that Valadez's then-current housing was contingent on her compliance with Rivera's instructions. *See id.*; *Mohsin*, 2024 WL 1896421, at *7 (affirming forfeiture by wrongdoing finding where, inter alia, defendant "reassured" complainant his family would help her if she did not testify); *cf. Brown*, 618 S.W.3d at 359 (concluding State did not meet its burden on forfeiture by wrongdoing because there was no evidence "that Appellant engaged in conduct that caused the victim's absence").

Based on this evidence, the trial court did not abuse its discretion by granting the State's motion for forfeiture by wrongdoing. *See, e.g.*, *Mohsin*, 2024 WL 1896421, at \*9; *Sohail*, 264 S.W.3d at 260. We overrule Rivera's fourth issue.

### Sufficiency of the Evidence

In his first issue, Rivera argues the evidence was insufficient to support the jury's findings that he: (1) intentionally, knowingly, or recklessly caused bodily injury to Valadez; (2) struck Valadez with a bat; and (3) used a bat as a deadly weapon.

### Standard of Review

We review a challenge to the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013).[2] Under that standard, we examine all the evidence in the light most favorable to the verdict and resolve all reasonable inferences from the evidence in favor of the jury's verdict to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015). We do not ignore any evidence "because the standard requires a reviewing court to view all of the evidence in the light most favorable to the verdict." *Cary v. State*, 507 S.W.3d 750, 759 n.8 (Tex. Crim. App. 2016) (emphasis omitted).

Circumstantial evidence is as probative as direct evidence to establish guilt, and we review circumstantial and direct evidence under the same standard of review. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). "Each fact need not point directly and independently to

---

[2] In his brief, Rivera argues the evidence is both legally and factually insufficient to support his conviction. The Texas Court of Criminal Appeals has abandoned factual sufficiency analysis, holding "that the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. 2010) (plurality op.).

the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "An appellate court cannot act as a thirteenth juror and make its own assessment of the evidence." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). Our role "is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Id*.

*Applicable Law*

A person commits assault if he, inter alia, "intentionally, knowingly, or recklessly causes bodily injury to another[.]" TEX. PENAL CODE ANN. § 22.01(a)(1). "'Bodily injury' means physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE ANN. § 1.07(a)(8). A person commits aggravated assault if he commits assault as defined by Texas Penal Code section 22.01 and he, inter alia, "uses or exhibits a deadly weapon during the commission of the assault." TEX. PENAL CODE ANN. § 22.02(a)(2). "Deadly weapon" means, inter alia, "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE § 1.07(a)(17)(B). "'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *See id.* § 1.07(a)(46).

*Application*

Rivera argues the evidence is insufficient to support a finding that he intentionally, knowingly, or recklessly caused bodily injury to Valadez. He further contends that there is no evidence that Valadez was struck with a bat. We disagree.

Although no bat was recovered or introduced as evidence, the jury saw pictures of bruises, bumps, and cuts on Valadez's body and heard testimony that the injuries shown in the pictures were consistent with being struck by a bat. *See id.* § 1.07(a)(8). The jury also heard Stebbings's and Garcia's testimony that they did not see any signs indicating Valadez had been injured in a car

accident and that Valadez told them her boyfriend hit her with a baseball bat. *See id.* § 22.01(a)(1). Additionally, the jury heard Garcia's testimony that Valadez identified Rivera as the boyfriend who had hit her with a bat. *See id.*

Garcia also testified that she performed a domestic violence assessment with Valadez consisting of "questions that ask about violence that has occurred in the past and in the present between the victim and the suspect." The assessment Garcia used results in a numerical score, and she explained that if the score is "22 or above, we [police] suggest highly that you go to a shelter[.]" Valadez's assessment of her relationship with Rivera resulted in a score of 85. Garcia testified that she would not have performed this assessment if she believed Valadez's original story that she had been hit by a car.

Furthermore, Stebbings testified that before he transported Valadez to the hospital by ambulance, Valadez's boyfriend—who Garcia later identified as Rivera—was "very nervous, very diaphoretic, which is sweaty, and pacing back and forth, going from one room to the other, and we were just trying to keep our eyes on him, too. . . . [H]e was very jittery and all over the place. . . . We didn't feel comfortable in the house." The jury could have rationally inferred that this testimony about Rivera's "unsettled demeanor" showed his consciousness of his own guilt. *See Cueva v. State*, 339 S.W.3d 839, 881–82 (Tex. App.—Corpus Christi–Edinburg 2011, pet. ref'd) (conduct that "indicates a consciousness of guilt may be received as a circumstance tending to prove that [the suspect] committed the act with which he is charged"). Moreover, the same jail phone calls the trial court considered during the forfeiture by wrongdoing hearing, plus several other similar calls, were admitted into evidence at trial. Based on those phone calls, the jury could have rationally inferred that Rivera engaged in "attempts to tamper with a witness" that showed his consciousness of his guilt. *See id.* at 882. We note, moreover, that while Valadez herself did

not testify at trial, two police officers testified it is common for domestic violence victims to refuse to cooperate with law enforcement and prosecutors.

Rivera also argues there is no evidence to support a finding that a bat is a deadly weapon. *See* TEX. PENAL CODE §§ 1.07(a)(17)(B), 22.02(a)(2). "A baseball bat is not a deadly weapon per se." *Hughes v. State*, 739 S.W.2d 458, 459 (Tex. App.—San Antonio 1987, no pet.); *see also English v. State*, 171 S.W.3d 625, 628 (Tex. App.—Houston [14th Dist.] 2005, no pet.). It is well-established, however, that a deadly weapon need not "possess[] any particular trait or characteristic other than its *capacity* to cause death or serious bodily injury." *Mims v. State*, 335 S.W.3d 247, 250 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (emphasis added); *see also Hughes*, 739 S.W.2d at 459 ("The gist of the offense of assault with a deadly weapon . . . is found in the character of the weapon and manner of its use.").

Here, Rivera himself elicited testimony from a police officer that a bat can be used with sufficient force to "make it lethal." *See* TEX. PENAL CODE § 1.07(a)(17)(B). Furthermore, Stebbings testified that Valadez's injuries were "significant," she reported pain of ten out of ten, and her leg looked "deformed." *See English*, 171 S.W.3d at 628. While "it is not required that the bodily injury inflicted be of a serious nature," the jury could properly consider the nature of Valadez's injuries in determining whether the bat qualified as a deadly weapon. *See Hughes*, 739 S.W.2d at 459–60. Finally, Stebbings's EMS report indicated that Valadez said her boyfriend hit her "numerous times" with the bat. *See Babcock v. State*, 501 S.W.3d 651, 655 (Tex. App.—Eastland 2016, pet. ref'd) (jury may consider, inter alia, "[t]he manner in which the defendant used the weapon").

Based on this evidence, the jury could have rationally found beyond a reasonable doubt that Rivera intentionally, knowingly, or recklessly caused bodily injury to Valadez, that he used a bat to do so, and that he used the bat in a manner that was capable of causing death or serious

bodily injury. *See* Tex. Penal Code §§ 22.01(a)(1), 22.02(a)(2); *English*, 171 S.W.3d at 628. Because a rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt, we overrule Rivera's first issue. *See, e.g.*, *Nowlin*, 473 S.W.3d at 317.

### *Pretrial Hearing*

In his third issue, Rivera argues the trial court abused its discretion by conducting a pre-trial hearing in his absence on June 30, 2021. On that day, the State informed the trial court that it "want[ed] to put . . . on the record" that it had subpoenaed Valadez; she had thus far failed to appear; and the State had filed a motion "requesting a forfeiture by wrongdoing hearing" because it believed Rivera had "procured" her absence. The State further represented that Rivera's counsel was "aware that there would be a motion for forfeiture by wrongdoing, that there would be jail calls that [the State] would be including, and he received a hard copy of the jail calls today." Neither Rivera nor his trial counsel were present during these statements. The State represented to the trial court that Rivera's counsel "said that we could proceed with just putting this on the record today," and the trial court coordinator confirmed he had "verified that with" her.

We will assume, without deciding, that Rivera's presence was required during the June 30, 2021 proceeding. *See* Tex. Code Crim. Proc. Ann. art 28.01, § 1 ("The defendant must be present at the arraignment, and his presence is required during any pre-trial proceeding."). Nevertheless, we may not reverse the trial court's judgment on that basis unless the record shows Rivera was harmed because the error affected his substantial rights. *See* Tex. R. App. P. 44.2(b); *King v. State*, 666 S.W.3d 581, 585 (Tex. Crim. App. 2023) (plurality op.). Rivera's absence did not affect his substantial rights if we have fair assurance that his absence "did not contribute to the jury's decision or had but slight effect." *King*, 666 S.W.3d at 588.

The trial court did not hear evidence on the State's forfeiture by wrongdoing motion on June 30, 2021. Accordingly, neither Rivera's presence nor his counsel's presence was necessary

- 14 -

to defend against the motion on that date.[3] *Cf. id.* at 586. Furthermore, the trial court did not rule on the State's motion or make any other "binding decisions adverse to" Rivera during that hearing. *Id.* at 588. As a result, we see nothing in the record to support a conclusion "that the discussions [that occurred that day] substantially influenced the jury's decision." *Id.* Any error in proceeding without Rivera on June 30, 2021 was harmless. *Id.*; TEX. R. APP. P. 44.2(b).

We overrule Rivera's third issue.

### *Ineffective Assistance of Counsel*

In his fifth issue, Rivera argues he did not receive effective assistance of counsel at trial.

#### *Standard of Review and Applicable Law*

We review claims of ineffective assistance of counsel under a two-pronged test. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). On the first prong, Rivera must show his trial counsel's representation was so deficient "that no reasonable trial strategy could justify trial counsel's acts or omissions[.]" *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). On the second prong, he "must show a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

Our review of trial counsel's performance "is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance." *Bone*, 77 S.W.3d at 833. The alleged ineffectiveness "must be firmly founded in the record[.]" *Thompson*, 9 S.W.3d at 813. Where the record is silent as to the reasons for trial counsel's conduct, he is entitled to "the benefit of the doubt," and we must assume that he "had a strategy if any reasonably

---

[3] When the trial court eventually heard the State's motion nine months later, both Rivera and his counsel were present. *King*, 666 S.W.3d at 586.

sound strategic motivation can be imagined." *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021). We do not examine "isolated acts or omissions," but instead analyze trial counsel's performance "in light of the totality of the representation[.]" *Scheanette v. State*, 144 S.W.3d 503, 509 (Tex. Crim. App. 2004) (internal quotation marks omitted).

The record in a direct appeal typically will not be sufficiently developed to support an ineffective assistance claim because it will not show the reasons for trial counsel's challenged actions. *See id.* at 510. As a result, ineffective assistance claims are generally unsuccessful "on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus." *Lopez*, 343 S.W.3d at 143. If trial counsel has not had an opportunity to explain his actions, we "should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (internal quotation marks omitted).

*Application*

Rivera first argues his trial counsel was ineffective because he "allow[ed] the State to proceed *ex parte* before the trial court" on June 30, 2021. He contends his counsel's absence from the June 30 proceeding was significant because if "the motion for forfeiture [had] been denied, the result of this case may have been very different." The record of the June 30 proceeding shows, however, that Rivera's trial counsel had been told the State intended only to briefly "put something on the record." The trial court did not hear or rule on the State's forfeiture by wrongdoing motion that day, and there is no indication that Rivera's counsel would have left the courtroom if he believed the motion would be heard that day. This isolated incident, when viewed in light of the totality of the representation, does not affirmatively demonstrate that counsel's conduct fell outside the wide range of reasonable professional assistance. *Scheanette*, 144 S.W.3d at 509; *see also Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012) ("The mere fact that another attorney

might have pursued a different tactic at trial does not suffice to prove a claim of ineffective assistance of counsel.").

Rivera next contends his trial counsel was ineffective because he "did not have witnesses present for the motion for forfeiture hearing." He contends this alleged error contributed to the trial court's decision to grant the State's motion for forfeiture by wrongdoing. Rivera's appellate brief does not explain what testimony the unidentified witnesses would have offered. His trial counsel explained below, however, that he wanted to present evidence showing Valadez had voluntarily executed at least two waivers of prosecution. He also explained why he believed Valadez's purportedly voluntary waivers showed Rivera had not engaged in wrongdoing and argued the State's conflicting evidence did not satisfy its burden to establish wrongdoing. Finally, he sought a continuance to give him an opportunity to subpoena the proposed witnesses. On this record, we cannot say that counsel's conduct was so outrageous that no reasonable defense counsel would have engaged in it. *See Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012). Because he has not had an opportunity to explain his actions, we therefore cannot conclude his performance was deficient. *See Goodspeed*, 187 S.W.3d at 392.

Finally, Rivera argues his trial counsel was ineffective because he filed a motion for new trial that alleged the existence of newly discovered evidence but did not ensure the motion was set for a hearing. Again, however, because Rivera's counsel has not had an opportunity to explain this conduct, we may not conclude his performance was deficient. *See id.*

We overrule Rivera's fifth issue.

## CONCLUSION

We affirm the judgment of conviction.

Beth Watkins, Justice

PUBLISH